Ann WILLIS and Jeff Willis,
Appellants–Plaintiffs,

v.

Christopher WESTERFIELD,
Appellee–Defendant.

No. 49A02–0211–CV–930.

Court of Appeals of Indiana.

Feb. 25, 2004.

1148

Robert E. Lehman, Lehman & Benedetto, Indianapolis, IN, Jeffrey A. Cooke, The Cooke Law Office, Lafayette, IN, for Appellants.

Thomas D. Collignon, Collignon & Dietrick, P.C., Indianapolis, IN, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Ann and Jeff Willis (collectively, "the Willises") allege that they should be granted a new trial as to damages on several grounds. Because we find that Christopher Westerfield never conceded liability, we reject the Willises' contention that the trial court erred by allowing the jury to determine fault. Next, we find that the trial court erred by instructing the jury on the affirmative defense of sudden emergency when Westerfield waived this defense by not raising it in his pleadings. We find this error harmless, however, because the jury did not predicate its verdict on this instruction. Additionally, we find that the trial court did not err by instructing the jury on the affirmative defense of failure to mitigate damages even though Westerfield did not call a medical expert to testify because expert testimony was not required. Finally, we find that the Willises have waived review of the denial of their motion to redact portions of their expert's deposition by failing to include either the videotape or transcript of the deposition as part of the record. Based on our resolution of these issues, we affirm.[1]

### Facts and Procedural History

On May 8, 1996, Westerfield rear-ended Ann Willis's ("Ann") vehicle as it was stopped at a red light. Ann reported no injury at the scene and declined the investigating officer's offer to call an ambulance. Westerfield simply advised the officer taking the accident report that he was unable to stop in time to avoid striking Ann's vehicle. Two and one-half years after the collision, Westerfield elaborated by stating that Ann suddenly and without warning changed lanes and applied her brakes at the intersection and that he was unable to stop his vehicle before it struck Ann's vehicle because of wet pavement and Ann's quick lane change.

In December 1997, the Willises filed their Complaint for Damages against Westerfield. Subsequently, Westerfield filed

---

1. We hereby deny Appellants' Request for Oral Argument.

an Answer, which he later amended. Neither the original Answer nor the Amended Answer averred the affirmative defense of sudden emergency. Additionally, Westerfield moved the trial court to delete portions of a preliminary instruction—which implied that Westerfield had the burden to prove negligence on the part of Ann or which suggested that the law of contributory negligence applies—because

> [c]ontributory negligence does *not* apply to the case at bar. The antiquated rule of contributory negligence has survived the Comparative Fault Act *ONLY* as to governmental entity defendants to which the Comparative Fault Act does not apply. Defendant is NOT raising "contributory negligence" as an affirmative defense ... Defendant is simply disputing that he was negligent.

Appellant's App. p. 66 (citations omitted). The trial court granted this motion.

At trial, the court admitted the videotaped deposition of Ann's treating physiatrist, Dr. Silbert, into evidence. Westerfield cross-examined Dr. Silbert at the deposition. The Willises moved the trial court to redact portions of Westerfield's cross-examination of Dr. Silbert. In particular, the Willises sought to exclude any references to Ann's pre-existing conditions, subsequent conditions, and any physical conditions unrelated to her collision injuries. Westerfield did not call a separate medical expert to testify on his behalf. At the close of evidence, Westerfield sought to have the jury instructed on the affirmative defense of sudden emergency. The Willises objected, claiming that Westerfield waived this defense by failing to raise it in his pleadings. The trial court overruled the Willises' objection and allowed the instruction.

Following the three-day trial, the jury returned a verdict in favor of the Willises, awarding them $5000 in compensatory damages without regard to fault. Based on a finding that Ann was fifty percent at fault, the $5000 verdict was reduced to $2500 in accordance with Indiana's Comparative Fault Act. The Willises filed this appeal seeking a new trial as to damages only.

## Discussion and Decision

The Willises raise several issues on appeal, which we restate and reorder. First, the Willises allege that the trial court erred by allowing the jury to determine fault under Indiana's Comparative Fault Act because prior to trial Westerfield represented to the trial court that he was not asserting the affirmative defense of contributory negligence and consented to the trial court's order withdrawing contributory negligence as an issue in the case. Next, the Willises assert that the trial court erred in instructing the jury. In particular, they allege that the jury should not have been instructed on the affirmative defense of sudden emergency because he had waived the defense by not including it in his responsive pleadings. They also maintain that it was error to give the jury a failure to mitigate damages instruction because Westerfield did not call his own medical expert on this defense. Lastly, the Willises claim that the trial court erroneously denied their motion to strike certain portions of Westerfield's cross-examination of the Willises' medical expert. We address each argument in turn.

### I. Contributory Negligence

The Willises contend that the trial court erred by allowing Westerfield to present evidence of Ann's fault in the collision after he withdrew his affirmative defense of contributory negligence. In his Answer to the Willises' 1997 Complaint, Westerfield asserted the affirmative defense of contributory negligence. Subsequently, Westerfield moved the trial court to withdraw his contributory negligence affirmative de-

fense on the grounds that Indiana's Comparative Fault Act ("the Act")—not contributory negligence—governed the case.

■■■ The Act applies generally to damages actions based in fault that accrued on or after January 1, 1985. Ind. Code § 34–51–2–1. The primary objective of the Act was to modify the common law rule of contributory negligence under which plaintiffs were barred from recovery where they were only slightly negligent. *Mendenhall v. Skinner & Broadbent Co.,* 728 N.E.2d 140, 142 (Ind.2000). The Act seeks to achieve this result through proportional allocation of fault, ensuring that each person whose fault contributed to cause injury bears his or her proportionate share of the total fault contributing to the injury. *Id.* The Act clarifies that in an action based on fault, any contributory fault chargeable to the plaintiffs diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the plaintiffs' contributory fault, but does not bar recovery unless the plaintiffs' contributory fault is greater than the fault of all persons whose fault proximately contributed to the plaintiffs' damages. Ind.Code §§ 34–51–2–5, –6.

The Willises construe the actions taken by Westerfield to eliminate his burden of proving Ann's contributory negligence as a concession that Ann was not at fault for the accident. Thus, they argue that the trial court should not have permitted Westerfield to adopt a contrary position and present evidence of Ann's fault in the collision during trial. The Willises' construction of Westerfield's actions, however, is erroneous. The record is replete with evidence that Westerfield moved the trial court to withdraw his affirmative defense of contributory negligence because the

Indiana Comparative Fault Act governed this case, rather than contributory negligence, not because he was conceding he was completely at fault for the accident. Indeed, in both his Answer and his Amended Answer, Westerfield averred that he was not negligent. Therefore, we do not find that the trial court erred by allowing Westerfield to present evidence of Ann's fault in the collision.

## II. Instructions

■■■ Additionally, the Willises allege that the trial court committed two instructional errors. First, the Willises maintain that the trial court erred by instructing the jury on sudden emergency because Westerfield did not assert sudden emergency as an affirmative defense in his pleadings. The Willises also argue that the trial court erred by instructing the jury on the affirmative defense of failure to mitigate damages because Westerfield did not offer any expert medical testimony regarding this defense. Initially, we note that the instruction of the jury is left to the sound judgment of the trial court, and our review of a trial court's decisions in this regard is highly deferential. *Lashbrooks v. Schultz,* 793 N.E.2d 1211, 1213 (Ind.Ct.App.2003), *trans. dismissed.* Accordingly, we will not disturb the trial court's judgment concerning instructions absent an abuse of discretion. *Id.* A trial court should give a tendered instruction if the instruction correctly states the law, the evidence supports the instruction, and the substance of the charge is not covered by other instructions. *Id.*

### A. Sudden Emergency

■■■ The Willises argue that the trial court erred by instructing the jury on the doctrine of sudden emergency.[2] The Wil-

---

**2.** The doctrine of sudden emergency recognizes that a reasonable person innocently deprived of time to consider his actions does not always exercise the same degree of accuracy

lises do not contend that the sudden emergency instruction misstated the law, was not supported by the evidence, or was covered by other instructions. Instead, they claim that Westerfield waived his right to raise the doctrine of sudden emergency by failing to allege sudden emergency as an affirmative defense in either his Answer or Amended Answer.

██ Indiana Trial Rule 8(C) provides that if a responsive pleading is necessary, the party filing the pleading must include within that responsive pleading any affirmative defense it seeks to assert. *Paint Shuttle, Inc. v. Cont'l Cas. Co.*, 733 N.E.2d 513, 525 (Ind.Ct.App.2000), *trans. denied.* Failure to do so results in waiver. *Id.* Waiver applies even if the affirmative defense is not listed among those defenses set out in Trial Rule 8(C). *Id.* Because sudden emergency is not one of the defenses specifically delineated in Trial Rule 8(C), we must determine whether the pleading requirements of Trial Rule 8(C) apply.

At the outset, we note that whether the doctrine of sudden emergency is actually a true affirmative defense is questionable. We have previously defined an affirmative defense as a defense "upon which the proponent bears the burden of proof and which, in effect, admits the essential allegations of the complaint but asserts additional matter barring relief." *Molargik v. West Enterprises, Inc.*, 605 N.E.2d 1197, 1199 (Ind.Ct.App.1993) (quoting *Rice v.*

*Grant County Bd. of Comm'rs*, 472 N.E.2d 213, 214 (Ind.Ct.App.1984)). Further, we have stated, "[t]he determination of whether a defense is affirmative depends upon whether it controverts an element of the plaintiff's prima facie case or raises matter outside the scope of the prima facie case." *Molargik*, 605 N.E.2d at 1199 (quoting *FMC Corp. v. Brown*, 526 N.E.2d 719, 728 (Ind.Ct.App.1988) *adopted by* 551 N.E.2d 444 (Ind.1990)).

When Westerfield asserted the doctrine of sudden emergency during discovery and at trial, he was not admitting an essential allegation of the complaint and asserting additional matter that would bar relief, as would be the case with a true affirmative defense; instead, he was merely seeking to alter the standard of negligence under which the jury would judge his conduct. *See Mullins v. Qualkenbush*, 777 N.E.2d 1177, 1180 (Ind.Ct.App.2002) ("Although the sudden emergency doctrine is generally described as an affirmative defense, it does not act to excuse fault but rather defines the conduct to be expected of a prudent person in an emergency situation."); *City of Terre Haute v. Simpson*, 746 N.E.2d 359, 367 (Ind.Ct.App.2001), *trans. denied; Compton v. Pletch*, 561 N.E.2d 803, 806 (Ind.Ct.App.1990), *adopted on transfer*, 580 N.E.2d 664 (Ind. 1991).

 Other panels of this Court have previously opined that sudden emergency is an affirmative defense.[3] Such proclama-

---

of judgment as one who has had the opportunity for reflection. *Barnard v. Himes*, 719 N.E.2d 862, 869 (Ind.Ct.App.1999), *trans. denied.* There are three factual prerequisites to an instruction on sudden emergency: 1) the actor must not have created or brought about the emergency through his own negligence; 2) the danger or peril confronting the actor must appear to be so imminent as to leave no time for deliberation; and 3) the actor's ap-

prehension of the peril must itself be reasonable. *Id.*

**3.** *See e.g., Aldana v. School City of East Chicago*, 769 N.E.2d 1201, 1210 (Ind.Ct.App.2002) ("The sudden emergency doctrine is an affirmative defense and the trial court has a duty to instruct the jury on this defense if the evidence presented at trial supports the instruction."); *Barnard v. Himes*, 719 N.E.2d 862, 868 (Ind.Ct.App.1999) ("The sudden

tions may have been the result of muddied language in that we have never been asked to address head-on whether sudden emergency is a true affirmative defense, which the proponent must include in a responsive pleading or risk waiving it.[4] We hold that although sudden emergency is not an affirmative defense in the strictest sense, it is close enough. As with affirmative defenses, the proponent of a sudden emergency defense has the burden of proving it. Furthermore, the defense of sudden emergency raises matters outside the pleadings, matters that may bar relief.

Thus, we believe that it is sound public policy and consistent with the underlying goals of Trial Rule 8(C) to require proponents of a sudden emergency defense to include the defense in their responsive pleadings. We reach this conclusion by recognizing that one of the underlying goals of Trial Rule 8 is to promote fairness through notice, thereby minimizing the chances of trial by ambush. It simply would not be fair to allow a party to wait until trial to spring a sudden emergency defense on the opposing party just because the defense does not fit the classic definition of an affirmative defense. To be sure, we would be elevating form over substance. Further, advance notice—as is given where the defense is asserted in the responsive pleadings—allows for better preparation and consequently better resolution of disputes, which in turn promotes judicial efficiency and economy. Consequently, we hold that a party asserting a

sudden emergency defense should include the defense in its responsive pleadings or risk waiver.

After reviewing the responsive pleadings, it is evident that Westerfield did not raise sudden emergency—even under Indiana's lenient policy of notice pleading. Indiana Trial Rule 15(B), however, provides an escape hatch for a defendant if an affirmative defense has not been pled in responsive pleadings. Trial Rule 15(B) provides, in pertinent part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If the evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance

---

emergency doctrine is an affirmative defense and the trial court has a duty to instruct the jury on this defense if the evidence presented at trial supports the instruction."); *Frito–Lay, Inc. v. Cloud,* 569 N.E.2d 983, 987 (Ind.Ct. App.1991) ("The sudden emergency doctrine is an affirmative defense, and the trial has the duty to instruct the jury concerning the defense is there is any evidence to support its application.").

4. While the question of whether a proponent of a sudden emergency defense could have the jury instructed on the defense when he did not raise it as an affirmative defense in his pleadings was raised in *Barnard v. Himes,* the panel deciding that case did not reach the issue of whether Trial Rule 8(C) required sudden emergency to be specifically pled because it resolved that the evidence at trial did not support the giving of a sudden emergency instruction. 719 N.E.2d at 868–69.

to enable the objecting party to meet such evidence.

As reiterated by this court in *Rogers v. Lockard*, 767 N.E.2d 982, 988 (Ind.Ct.App. 2002), Trial Rule 15(B) embodies two distinct procedures. The first procedure applies when the parties either expressly or impliedly consent to the trial of issues not embraced within the pleadings. *Id.* We apply the second procedure when a party objects on the ground that the proffered evidence is outside the issues framed in the pleadings. *Id.* Here, because the Willises objected to the sudden emergency instruction as being outside the pleadings, they did not consent to the insertion of the new issue. Thus, we must focus our attention on the latter portion of Trial Rule 15(B).

■■■ Generally, if amending the pleadings would aid in the presentation of the merits of the case, the objecting party must demonstrate to the trial court that they have been actually prejudiced in their defense before the court should disallow such amendments. *See* T.R. 15(B); *Rogers*, 767 N.E.2d at 988. "This means that the objecting party will be put to some serious disadvantage . . ., and it is not enough that an imagined grievance appears, or some tactical advantage is lost." 2 WILLIAM F. HARVEY, INDIANA PRACTICE § 15.4 at 63 (3d ed.2000); *Rogers*, 767 N.E.2d at 988. Here, however, we do not reach the prejudice inquiry because we find that Westerfield waived the sudden emergency affirmative defense by failing to invoke the protections afforded by Trial Rule 15(B).

When the Willises objected to the sudden emergency instruction as being outside of the pleadings, Westerfield should have moved the trial court to amend the pleadings to conform to the evidence, but he did not. This would have given the Willises the opportunity to show if and how they would be prejudiced if the trial court allowed the jury to consider the sudden emergency affirmative defense. Because Westerfield did not include the affirmative defense of sudden emergency in his responsive pleadings—either originally or by subsequent amendment, we conclude that the trial court abused its discretion by allowing the instruction on sudden emergency.

■■■ Having determined that the sudden emergency instruction should not have been given, we must now determine whether such error requires reversal. Generally, the erroneous giving of an instruction is grounds for reversal only where it appears that the jury's verdict could have been predicated upon such an instruction. *Lashbrooks*, 793 N.E.2d at 1214. Here, the sudden emergency instruction directed the jury that "[i]f you find from the evidence that a sudden emergency confronted the Defendant and that he responded as an ordinarily prudent person would have when faced with the same or similar emergency, you may not find the Defendant negligent." Tr. p. 552. After receiving this instruction, the jury rendered a verdict finding Westerfield negligent. Because the instruction directed the jury that it "may not find the Defendant negligent" if it found Westerfield was confronted with a sudden emergency and responded as an ordinarily prudent person, it is apparent that the jury did not predicate its verdict on the erroneous instruction. Therefore, we find any error in the giving of the sudden emergency instruction harmless.

**B. Failure to Mitigate Damages**

■■ The second instructional error alleged by the Willises is that the trial court improperly instructed the jury on the affirmative defense of failure to mitigate damages because Westerfield did not present

an independent medical expert in support of this defense. We have previously held that "questions of medical causation of a particular injury are questions of science necessarily dependent on the testimony of physicians and surgeons learned in such matters." *Hannan v. Pest Control Servs., Inc.*, 734 N.E.2d 674, 679 (Ind.Ct.App. 2000), *trans. denied.* We have also noted, however, that testimony of an expert witness is necessary only when the issue of cause is not within the understanding of a lay person. *Daub v. Daub*, 629 N.E.2d 873, 878 (Ind.Ct.App.1994), *trans. denied.*

Westerfield's failure to mitigate defense was based on Ann's sporadic course of treatment. Specifically, Westerfield's theory was that by refusing to follow through with Dr. Silbert's course of treatment Ann increased her pain and suffering, which she was seeking compensation for in the lawsuit. At trial, Westerfield presented evidence that Ann failed to heed her doctor's recommendations and medical advice; that she refused her doctor's orders to attend physical therapy; and that her treatment coincided with the litigation. Based on the foregoing evidence, the jury could have concluded that Ann failed to mitigate her damages drawing from their own experiences and knowledge. As a result, we find that the trial court did not err by instructing the jury on the affirmative defense of failure to mitigate damages even though Westerfield did not present independent expert medical testimony.[5]

### III. Refusal to Redact Portions of Video Deposition Testimony

The Willises also allege that the trial court erred by denying their motion to redact portions of the video deposition testimony of their medical expert Dr. Silbert. Because the Willises failed to provide this Court with either the videotape or the transcript of Dr. Silbert's deposition, we find that they have waived review of this issue. *See* Ind. Appellate Rule 46(A)(8)(a); *Romine v. Gagle*, 782 N.E.2d 369, 386 (Ind.Ct.App.2003) ("A party generally waives any issue for which it fails to develop a cogent argument or support with adequate citation to authority and portions of the record."), *reh'g denied, trans. denied.*

Judgment affirmed.

SHARPNACK, J., and BAILEY, J., concur.

---

5. The Willises also claim that the jury verdict was contrary to law because Westerfield did not proffer a medical causation expert in support of his argument that the Willises failed to mitigate their damages. Because we have resolved that Westerfield was not precluded from asserting that the Willises failed to mitigate their damages by not presenting an independent medical expert, we do not find the jury verdict to be contrary to law on this basis.