**Joseph MROZ, Appellant–Defendant,**

v.

**Robert HARRISON, Appellee–Plaintiff.**

**No. 48A05–0402–CV–68.**

Court of Appeals of Indiana.

Sept. 30, 2004.

Patrick J. Dietrick, Collignon & Dietrick, P.C., Indianapolis, IN, Attorney for Appellant.

Lisa Deley, Howard DeLey & Dudley, Anderson, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Joseph Mroz ("Mroz") appeals the trial court's judgment in favor of Appellee–Plaintiff Robert Harrison ("Harrison"). We affirm.

### Issues

Mroz raises four issues, which we consolidate and restate as:

I. Whether the trial court abused its discretion when it refused to allow Mroz to refresh Harrison's recollection of an alleged fall, pursuant to Indiana Evidence Rule 612;

II. Whether the trial court abused its discretion by permitting a doctor's deposition to be read into evidence based upon "exceptional circumstances," pursuant to Indiana Trial Rule 32(A)(3)(e), in the absence of prior notice and application; and

III. Whether the trial court abused its discretion by failing to instruct the jury on the issues of comparative fault and mitigation of damages.

## Facts and Procedural History

This lawsuit arises from a rear-end collision that occurred on November 26, 1999, when the vehicle driven by Mroz struck the rear of a van in which Harrison was a passenger. At the time of the accident, Harrison was employed by Elsten Richards as a forklift driver and by the Salvation Army as a bell ringer during the holiday season. After the accident, Harrison sought medical treatment from Doctor William H. Wolfe ("Doctor Wolfe") for soft tissue injuries. Harrison received treatment from Doctor Wolfe from December 7, 1999, to February 4, 2000.

On August 14, 2000, Harrison filed a negligence complaint against Mroz. On November 14, 2000, Mroz filed his amended answer wherein he asserted Harrison's failure to mitigate damages as an affirmative defense. On December 13, 2001, Harrison deposed Doctor Wolfe. During this deposition, Mroz's counsel was given the opportunity to assert objections and to cross-examine. At a subsequent jury trial for which Doctor Wolfe was unavailable, and over Mroz's objection, the trial court permitted Harrison to read the deposition into evidence. In addition, during Harrison's cross-examination testimony, the trial court refused to allow Mroz to use a document to refresh Harrison's recollection of an alleged intervening fall because it was not prepared by Harrison. Further, the trial court refused to instruct the jury on the doctrines of comparative fault and mitigation of damages. At the conclusion of trial, the jury returned a verdict in favor of Harrison in the amount of $9,000.00, and the trial court entered judgment pursuant to the verdict. This appeal by Mroz ensued.

## Discussion and Decision

### I. Refreshing a Witness's Recollection

■ On appeal, Mroz first argues that the trial court abused its discretion by refusing to permit him to refresh Harrison's recollection of a purported fall pursuant to Indiana Evidence Rule 612. During cross-examination of Harrison, Mroz attempted to use a document prepared by Harrison's employer to refresh Harrison's recollection regarding an alleged fall that had occurred after the accident in question and that had prevented Harrison from returning to work for a few days. The document apparently provided that Harrison had called his employer to report that he had fallen down some stairs and could not get to the phone. Harrison objected to the document and, after a lengthy bench conference, the trial court sustained the objection because Harrison did not personally prepare the document. However, the trial court allowed Mroz to impeach Harrison with the document if he so desired.

Indiana Evidence Rule 612(a) provides: "If, while testifying, a witness uses a writing or object to refresh the witness's memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying." Although this evidence rule clearly envisions the use of writings to refresh a witness's memory, it "does not address the method by which the witness's memory may be refreshed." *Thompson v. State,* 728 N.E.2d 155, 160 (Ind.2000) (quoting 13 Robert Lowell Miller, Jr., *Indiana Practice* § 612.101, at 225 (2d ed.1995)), *reh'g denied.* Nevertheless, in *Thompson,* our supreme court delineated the proper procedure for refreshing a witness's recollection and held that:

> The witness must first state that he does not recall the information sought by the questioner. The witness should be directed to examine the writing, and be asked whether that examination has refreshed his memory. If the witness answers negatively, the examiner must

find another route to extracting the testimony or cease the line of questioning. *Thompson,* 728 N.E.2d at 160 (quoting Miller § 612.101 at 226). The *Thompson* court also recognized that Indiana Evidence Rule 612 does not suggest, much less require, that the writing used to refresh a witness's memory must have been prepared by the witness. *Id.* at 160–61.

Further, before the adoption of the Indiana Rules of Evidence, the Indiana Supreme Court had long held that a writing used to refresh a witness's memory could be prepared by the witness or another person. *See Gaunt v. State,* 457 N.E.2d 211, 216 (Ind.1983) (quoting *Clark v. State,* 4 Ind. 156, 157 (1853)), *overruled on other grounds by, Modesitt v. State,* 578 N.E.2d 649, 652 (Ind.1991). Accordingly, the trial court erred by refusing to permit Mroz to use the document in question to refresh Harrison's recollection on the basis that Harrison did not prepare such document. *See, e.g., Thompson,* 728 N.E.2d at 161.

■ Nevertheless, an error will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Id.; see also* Ind. Trial Rule 61. Here, despite the trial court's erroneous ruling regarding the document, it permitted Mroz to use the document to impeach Harrison's testimony that he had not fallen down stairs subsequent to the accident. Mroz did not impeach Harrison with the document, but rather asked the following question:

Q: So it's your testimony here today that you don't recall falling on February 3, 2000?

A: It's ... I just don't recall.

Tr. at 256. Mroz points to nothing in the document that was not covered in this colloquy or that could not have been cov-ered through impeachment. Accordingly, there is no showing that the trial court's erroneous ruling affected Mroz's substantial rights.

## II. Admission of Doctor Wolfe's Deposition

■ Mroz next argues that the trial court abused its discretion by admitting Doctor Wolfe's deposition into evidence pursuant to Indiana Trial Rule 32, in the absence of prior notice and application. We disagree.

■ Indiana Trial Rule 32 provides, in pertinent part, as follows:

(A) Use of depositions. At the trial ... any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition, by or against any party who had reasonable notice thereof or by any party in whose favor it was given in accordance with any one [1] of the following provisions:

\* \* \*\* \*

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

\* \* \*\* \*

(e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

The question of whether "exceptional circumstances" exist so as to justify admitting a deposition into evidence, pursuant to Indiana Trial Rule 32(A)(3)(e), is properly left to the sound discretion of the trial court and reversible error can only be predicated upon a showing that the trial court has abused its discretion. *Wells v. Gibson Coal Co.*, 170 Ind.App. 445, 448, 352 N.E.2d 838, 841 (1976); *see also Gates v. Rosenogle*, 452 N.E.2d 467, 472–73 (Ind. Ct.App.1983). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 926 (Ind.Ct.App.2003), *reh'g denied, trans. denied.*

Here, the record reveals that, during his deposition, Doctor Wolfe informed the parties that he "could be available" to testify at trial, which was originally scheduled for March of 2002. Tr. at 144. The record further demonstrates, however, that, on the date of trial, i.e., November 18, 2003, Harrison notified the trial court and Mroz that Doctor Wolfe would be unavailable for trial—as evidenced by his affidavit wherein he stated that "due his extensive patient load and necessity to carry on his medical practice, he'd be unavailable to appear and testify"—and requested to read Doctor Wolfe's deposition into evidence. *Id.* at 14. Based upon Doctor Wolfe's affidavit, which was discussed at length prior to jury selection but was apparently not admitted into evidence, the trial court found the existence of exceptional circumstances and, thus, allowed Harrison to read Doctor Wolfe's testimony into evidence, over Mroz's objection. Under these circumstances, and pursuant to Indiana Trial Rule 32(A)(3)(e), we find no abuse of discretion in the ruling of the trial court, especially in light of the fact that Mroz had ample opportunity to and indeed did cross-examine Doctor Wolfe during such deposi-

tion. Accordingly, we find no error in admitting the deposition in question.

### III. Jury Instructions

Lastly, Mroz contends that the trial court abused its discretion by failing to instruct the jury on the issues of comparative fault and mitigation of damages. Initially, we note that the instruction of the jury is left to the sound judgment of the trial court, and our review of a trial court's decisions in this regard is highly deferential. *Lashbrooks v. Schultz*, 793 N.E.2d 1211, 1213 (Ind.Ct.App.2003), *cert. dismissed.* Accordingly, we will not disturb the trial court's judgment concerning instructions absent an abuse of discretion. *Willis v. Westerfield*, 803 N.E.2d 1147, 1151 (Ind.Ct.App.2004). A trial court should give a tendered instruction if the instruction correctly states the law, the evidence supports the instruction, and the substance of the charge is not covered by other instructions. *Id.*

Mroz asserts that the trial court abused its discretion by failing to give the jury two jury instructions. The first rejected instruction provides as follows:

*General Comparative Fault Instruction*

If you find the defendant is not at fault, then your verdict should be for the defendant, and no further deliberation of the jury is necessary.

If you find the defendant was at fault, you must assess the fault on a percentage basis between [Harrison] and [Mroz.] The percentage of fault assessed to each party will allow you to decide whether [Harrison] is entitled to recover damages, and if so, the amount of damages. You may only assess fault to a named nonparty.

You will therefore decide the comparative fault issues as follows:

—*First,* you must decide the percentage of fault, if any, for [Harrison]

and [Mroz] in the proximate cause of [Harrison's] injuries and damages. These percentages *must* total 100%.

—*Next,* if you decide [Harrison's] fault is *greater than 50%,* then you *must* return your verdict for [Mroz;] and no further deliberation is required.

—*However,* if you find that [Harrison's] fault is *50% or less,* then you must decide the total amount of damages [Harrison] is entitled to recover, if any, without regard to fault.

—*Then,* you must multiply [Harrison's] total damages by [Mroz's] percentage of fault and return your verdict for [Harrison] and against [Mroz] in the amount of the product of that multiplication.

The verdict forms provided to you by the court will help guide you through this process.

Tr. at 157. The second refused instruction provides as follows:

*Burden of Proof on the Issues*

[Harrison] is seeking to recover damages from [Mroz] on the theory of negligence.

In order for [Harrison] to recover damages, [he] has the burden of proving the following propositions by a preponderance of the evidence:

1. That [Mroz] was negligent[;]

2. That [Harrison] sustained an injury; and

3. That the negligence of [Mroz] was the proximate cause of [Harrison's] alleged injuries.

If you find from a consideration of all the evidence that any of these three (3) propositions has not been proved by [Harrison,] your verdict should be for [Mroz.] As I have stated, [Harrison] must prove these propositions; [Mroz] has no burden of disproving them.

[Mroz] has raised certain specific defenses and [Mroz] does have the burden of proving these defenses by a preponderance of the evidence. [Mroz] claims that [Harrison] may have failed to mitigate their damages, and that [Harrison's] injuries and damages, if any, are the proximate result of [his] own negligence, barring or reducing entitlement to recovery.

[Mroz] has the burden of proving the following propositions by a preponderance of the evidence.

*Id.* at 158.

At the outset, we observe that, at trial, Mroz admitted that he was at fault for the accident in question, and asserted as an affirmative defense that Harrison had failed to mitigate his damages. Thus, these two proffered instructions relate to the doctrine of comparative fault only inasmuch as Mroz claimed that Harrison failed to mitigate his damages.[1] As such, the instructional error alleged by Mroz is that the trial court improperly failed to instruct the jury on the affirmative defense of failure to mitigate damages because Doctor Wolfe provided sufficient expert testimony regarding this defense. We have previously held that "questions of medical causation of a particular injury are questions of science necessarily dependent on the testimony of physicians and surgeons learned in such matters." *Hannan v. Pest*

---

1. Indiana Code Section 34–6–2–45(b) defines "fault," for purposes of the Comparative Fault Act, as "any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages."

*Control Servs., Inc.,* 734 N.E.2d 674, 679 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* We have noted, however, that testimony of an expert witness is necessary only when the issue of cause is not within the understanding of a lay person. *Daub v. Daub,* 629 N.E.2d 873, 878 (Ind.Ct.App. 1994), *trans. denied.*

In the present case, Mroz's failure to mitigate defense was based upon Harrison's failure to follow Doctor Wolfe's treatment orders. Specifically, Mroz theorized that Harrison increased his pain and suffering and prolonged his recovery, for which he was seeking compensation in the lawsuit, when he refused to follow through with Doctor Wolfe's course of treatment, including physical therapy. At trial, however, the only evidence that Mroz presented to support his defense was the deposition of Doctor Wolfe, i.e., Harrison's treating physician.[2] In his deposition, Doctor Wolfe testified that, on some office visits, he found Harrison's movements to be "self-limited because [Harrison] expected a movement to be painful." Tr. at 171. Doctor Wolfe also testified that, during one visit, Harrison was uncooperative as "[h]e was unwilling to raise his arms above mid-chest level." *Id.* at 172. In addition, Doctor Wolfe testified that Harrison exaggerated his symptoms for possibly "secondary gain sorts of issues." *Id.* at 174. Doctor Wolfe further noted that Harrison only completed approximately fifteen minutes of physical therapy and, later, requested to return to his employment without restrictions.

This testimony from Doctor Wolfe, which was the only expert medical testimony offered, does not support Mroz's assertion that Harrison's failure to cooperate with prescribed treatment, exaggeration of symptoms, and failure to complete physical therapy aggravated or increased his injuries. To the contrary, Doctor Wolfe testified that ninety percent of people with Harrison's soft tissue injuries "get well within three (3) months, ninety (90) days" and that Harrison recovered in approximately seven weeks. Tr. at 185. Accordingly, we cannot say that the trial court abused its discretion when it determined that the evidence did not support the giving of the mitigation of damages instruction. *See, e.g., Kristoff v. Glasson,* 778 N.E.2d 465, 474 (Ind.Ct.App.2002) (holding that evidence that plaintiff did not regularly perform her prescribed exercises was insufficient to support a mitigation of damages claim in the absence of physician testimony that she failed to mitigate her damages).

For the foregoing reasons, we affirm the trial court's judgment in favor of Harrison.

Affirmed.

SHARPNACK, J., and MAY, J., concur.

---

2. We note that Mroz's arguments on appeal appear to be somewhat contradictory in that, on the one hand, Mroz contends that the trial court abused its discretion by admitting Doctor Wolfe's deposition at trial and yet, on the other hand, he relies upon the deposition testimony to prove his contention that the trial court erred by refusing to instruct the jury on the doctrines of comparative fault and mitigation of damages. We also observe that the trial court afforded Mroz the opportunity to subpoena Doctor Wolfe for trial, which he declined.