**Marilyn STATON, Appellant–Defendant,**

v.

**Frances N. HAWKINS, Appellee–Plaintiff.**

No. 48A05–0403–CV–189.

Court of Appeals of Indiana.

Nov. 23, 2004.

M. Michael Stephenson, Jennifer Suttles Messer, McNeely, Stephenson, Thopy & Harrold, Shelbyville, IN, for Appellant.

David W. Craig, Scott A. Faultless, Craig, Kelley & Faultless, Indianapolis, IN, for Appellee.

**OPINION**

VAIDIK, Judge.

### Case Summary[1]

Marilyn J. Staton appeals the jury verdict in favor of Frances N. Hawkins.[2] Because we find that Staton failed to meet her burden of proving that Hawkins failed to mitigate her damages, we find that the trial court did not abuse its discretion in removing the issue of failure to mitigate damages from the jury. Additionally, because the medical expert testified that some medical professionals would disagree with his advice to Hawkins to continue with life as normal so long as she could tolerate the pain, we cannot say the trial court abused its discretion by instructing the jury on the impact of attending medical personnel mistake on recoverable damages. Consequently, we affirm.

---

1. We heard oral argument on this case in our courtroom on November 9, 2004. We commend counsel for their preparation and their able presentations.

2. Hawkins now uses her married name, Earlywine. Because she filed her complaint using the last name of Hawkins, we will use "Hawkins" to refer to her throughout this opinion.

## Facts and Procedural History

This case arises out of an automobile collision involving Staton and Hawkins, which occurred in December 1998. Hawkins sustained an injury to her right wrist, prompting her to file a complaint for damages in April 2000. Among other things, Hawkins alleged in her complaint, "As a direct and proximate result of Marilyn Staton's negligence, Frances Hawkins sustained physical pain and mental suffering, and it is reasonably certain physical pain and mental suffering will be experienced in the future, as a result of the injuries." Appellant's App. p. 24. In her answer, Staton alleged as an affirmative defense, "Hawkins may have failed to mitigate her damages." *Id.* at 27. The case was set for a jury trial. Before the commencement of the trial, Staton admitted that she was solely negligent in causing the collision in which Hawkins was injured. The case, however, went to trial on the issue of damages.

The central focus at the trial on damages was Hawkins' decision to ride and race her four-wheel, all-terrain vehicle ("ATV") following the accident. Riding and racing ATVs have been a big part of Hawkins' life. Hawkins first began riding ATVs at the age of seven or eight. In 1995, she began competitively racing ATVs. She met the man she eventually married when she ordered a part for her ATV from him. She encouraged her husband to get involved in ATV racing, and they traveled together to competitions around the United States. Hawkins and her husband currently own and operate an ATV parts, sales, and repair shop out of their home and plan on opening an indoor racing facility and promoting ATV racing events.

At trial, Hawkins testified that she competed in the Grand National Cross Country Series ("GNCC Series")[3] during the 1999, 2000, and 2001 racing seasons with the knowledge of her treating physicians. Her physicians never advised her against racing and encouraged her to live her life as normal, telling her to "use [her wrist] as much as possible and just to do everything [she] normally would. It wasn't going to get any worse. [It p]robably wouldn't get any better[,] but it wouldn't get any worse." Tr. p. 98. Thus, Hawkins continued racing but employed several measures to reduce her potential for aggravating her wrist injury while doing so. In particular, she installed a number of anti-vibration devices and a thumb-controlled adjustable throttle on her four-wheeler, taped her wrist, and wore physician-prescribed wrist braces. Hawkins reported that she experienced pain with racing, but she additionally noted that she similarly experienced pain with routine activities such as picking up a skillet, a gallon of milk, or her infant son. Hawkins explained that the pain she experienced after racing was less severe than the pain she experienced when she played racquetball. Further, Hawkins testified that her continued racing led to publicity and corporate sponsorships, which in turn advanced the interests of her and her husband's ATV business. *Id.* at 125, 128.

Hawkins' husband, Chris Earlywine, also testified. In pertinent part, Earlywine testified that racing made Hawkins' "pain worse." *Id.* at 259. But, Earlywine added that routine activities caused Hawkins pain as well, noting: "I mean every

---

3. The GNCC Series is an outdoor racing competition that is held at different locations throughout the United States. *See* http://www.gnccracing.com. Various types of races are run at the GNCC events, including bike and ATV racing. *Id.* Hawkins competed by racing her four-wheel ATV on 10–mile courses consisting of wooded trails, fields, and streams during the 1999, 2000, and 2001 racing seasons. Tr. p. 67, 79.

time [she uses] the wrist, it makes it worse." *Id.* Additionally, the following colloquy with the medical causation expert, Dr. Hill Hastings, II, transpired:

Q: And you have seen no history or any facts or ... documents that show that she's had any type of trauma during four-wheel racing that she may have been involved in after this accident, have you?

A: No, I have not seen records pursuant to that.

Q: And just using her accelerator on the four-wheeler, if she indicates that, that may cause her increased symptoms as well as sweeping or mopping or lifting or that after she uses it, uses her right hand extensively[,] then she has more pain when she's doing even simple things, would all those types of things be consistent with the injury that you believe she suffered in this automobile accident?

A: Yes. I believe that she had, in some way, injured her scapholunate joint, and then the history suggests to me that it was her motor vehicle accident and that she has a degree of instability that, with use, causes pain and inflammation. When she overuses it, her symptoms get worse. When she rests it, it will get better. If she is braced [or] if she's not moving her wrist a lot, that may partially control her symptoms. So, yes, I think there are things where, you know, grip[p]ing, lifting, twisting, you know, carrying things are going to elicit symptoms in her wrist.

Q: So those types of things wouldn't necessarily make the injury worse. It would just cause you to have more pain; is that fair?

A: Yes. *I believe that those kinds of activities are not likely to extend the injury from one grade to another.* It simply, because of that instability, brings out and causes inflammation and, therefore, pain and symptoms.

*Id.* at 239–40 (emphasis supplied).

At the close of the evidence, Hawkins moved the court for judgment on the evidence on the failure to mitigate defense. In support of this motion, Hawkins alleged that there was no evidence presented that Hawkins aggravated or increased her injury by racing her four-wheeler and that Hawkins' treating physicians knew that she rode four-wheelers competitively and did not dissuade her from continuing to do so. The trial court granted this motion. Consequently, the trial court refused Staton's tendered final instruction on the affirmative defense of failure to mitigate damages, which provided:

Fault includes any act or omission that is negligent, willful, wanton, reckless or intentional toward the person or property of others. The term also includes failure to mitigate damages. The doctrine of mitigation of damages imposes a duty on an injured party to exercise reasonable diligence and ordinary care in attempting to minimize his or her damages or avoid aggravating his or her injury. The injured party is required to use the same care and diligence as a person of ordinary prudence under like circumstances. The principle of mitigation of damages addresses conduct by the injured party that aggravates or increases the party's injuries. The defendant has the burden of proving by a preponderance of the evidence a plaintiff's failure to mitigate damages. Plaintiff's fault, if any, is an issue in this case. If the Plaintiff failed to mitigate her damages which contributed to her inju-

ries, then the Plaintiff either will receive no compensation or will receive only partial compensation for any injury. Another instruction will tell you how to determine the effect of Plaintiff's fault, if any, upon your verdict.

Appellant's App. 29. Over Staton's objection, however, the trial court instructed the jury:

If [you] find that the plaintiff exercised reasonable care in securing competent medical personnel to treat her injuries, then the plaintiff may recover her entire damages, including damages caused by the original injury, and also any damages caused by the subsequent aggravation of the original injury, or the failure to minimize the original injury, flowing from the mistake of attending medical personnel.

*Id.* at 43. The jury returned a verdict in favor of Hawkins in the amount of $75,000. Staton filed a motion to correct errors, which was deemed denied pursuant to Indiana Trial Rule 53.3. This appeal ensued.

### Discussion and Decision

Staton contends that the trial court erred by granting Hawkins' motion for judgment on the evidence regarding Staton's affirmative defense of failure to mitigate damages. Staton also alleges that the trial court erroneously instructed the jury. We address each issue in turn.

### I. Judgment on the Evidence

Staton contends that the trial court erred by granting Hawkins' motion for judgment on the evidence regarding Staton's affirmative defense of failure to mitigate damages. The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence, and the grant or denial of a motion for judgment on the evidence is within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. *Northrop Corp. v. Gen. Motors Corp.*, 807 N.E.2d 70, 86 (Ind.Ct.App.2004), *trans. denied. See also* Indiana Trial Rule 50(A) ("Where all or some of the issues in a case tried before a jury ... are not supported by sufficient evidence ..., the court shall withdraw such issues from the jury and enter judgment thereon....").

On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. *Northrop Corp.*, 807 N.E.2d at 87. When the trial court considers a motion for judgment on the evidence, it must view the evidence in the light most favorable to the non-moving party. *Id.* Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *Id.*

When reviewing a trial court's ruling on a motion for judgment on the evidence, we examine the evidence and the reasonable inferences most favorable to the non-movant from "a quantitative as well as qualitative perspective." *Id.* (quoting *Hartford Steam Boiler Inspection & Ins. v. White*, 775 N.E.2d 1128, 1133 (Ind. Ct.App.2002), *reh'g denied, trans. denied* ). "Quantitatively, evidence may fail only where there is none at all; however, qualitatively, it fails when it cannot reasonably be said that the intended inference may logically be drawn therefrom." *Id.* When the intended inference can rest on no more than mere speculation or conjecture, the failure of inference may occur as a matter of law. *Id.*

Recent Indiana case law clearly indicates that the affirmative defense of failure to mitigate damages requires medical causation evidence that a plaintiff's conduct aggravated or increased her injury. *See, e.g., Mroz v. Harrison*, 815

N.E.2d 551, 556–57 (Ind.Ct.App.2004); *Wilkinson v. Swafford*, 811 N.E.2d 374, 384 (Ind.Ct.App.2004); *Kristoff v. Glasson*, 778 N.E.2d 465, 474 (Ind.Ct.App.2002). The issue then before this Court is whether there was any medical causation evidence before the trial court to support Staton's affirmative defense of failure to mitigate damages either directly or inferentially.

The failure to mitigate damages defense is commonly raised in the context where a patient has failed to heed the advice of treating medical personnel. For example, in *Sikora v. Fromm*, 782 N.E.2d 355 (Ind. Ct.App.2002), *trans. denied*, the defendant argued that the jury should have been instructed on the failure to mitigate damages defense because the plaintiff both rescheduled appointments and failed to show up for treatment with his chiropractor. The treating chiropractor testified that it is important for patients to follow up with prescribed treatment, but the chiropractor did not testify that such a failure to follow up aggravated or increased the plaintiff's injuries. Finding that such testimony "alone does not support the inference that [the plaintiff's] actions, or inactions, *aggravated or increased* his injuries[,]" we concluded that the trial court did not abuse its discretion by refusing to instruct the jury on the affirmative defense of failure to mitigate damages. *Id.* at 362 (emphasis in original).

Then, in *Kristoff v. Glasson*, 778 N.E.2d 465 (Ind.Ct.App.2002), the defendant raised the failure to mitigate damages defense based on the plaintiff's failure to complete her home exercise program. We noted that the defendant's mitigation of damages claim went to the issue of medical causation and, as such, required medical expert testimony. *Id.* at 475 (citing *Daub v. Daub*, 629 N.E.2d 873 (Ind.Ct.App. 1994), *trans. denied*). Because three medical causation experts testified that the plaintiff did not fail to mitigate her damages and a fourth medical causation expert testified that the plaintiff "had not done anything or *failed to do* anything to worsen her condition," we found that there was insufficient evidence to support a failure to mitigate damages defense. *Id.* at 474 (emphasis in original).

A similar claim was before this Court in *Wilkinson v. Swafford*, 811 N.E.2d 374 (Ind.Ct.App.2004). In that case, the plaintiff argued on appeal that the trial court erroneously instructed the jury on the failure to mitigate damages defense because there was no medical causation evidence that her failure to follow the advice of treating medical personnel, which included failing to follow up in a timely manner, her decision not to have surgery, her decision not to have a nerve root block, and her lack of cooperation during a diagnostic exam, aggravated or increased her injuries. We agreed and remanded the case for a new trial because we could not be certain that the jury did not rely on the erroneous instruction in reducing the plaintiff's damages. *Id.* at 384, 392.

Most recently this issue was discussed in *Mroz v. Harrison*, 815 N.E.2d 551 (Ind.Ct. App.2004). The defendant raised the affirmative defense of failure to mitigate damages based on the plaintiff's failure to follow his doctor's orders. The defendant theorized that the plaintiff increased his pain and suffering and prolonged his recovery, for which he was seeking compensation, by refusing to follow through with the treating physician's prescribed course of treatment. The defendant also presented evidence that the plaintiff may have exaggerated some of his symptoms. The defendant, however, did not present any medical expert testimony that the plaintiff's failure to cooperate with his prescribed treatment and exaggeration of

symptoms aggravated or increased his injuries. Therefore, we concluded that the trial court did not abuse its discretion by refusing to instruct the jury on failure to mitigate damages. *Id.* at 557.

In this case, however, Hawkins followed her physician's advice to "use [her wrist] as much as possible and just to do everything [she] normally would," Tr. p. 98, and now Staton seeks to penalize her for doing so. To that end, Staton argues that Hawkins failed to mitigate her damages by continuing to race ATVs following the accident, which in turn increased the pain and suffering for which Hawkins seeks compensation. Staton presented no medical causation expert testimony that Hawkins aggravated or increased her injury, claiming that "the injuries and pain Hawkins sustained by racing her four-wheeler were objective in nature." Appellant's Br. p. 9 (citing *Schloot v. Guinevere Real Estate Corp.,* 697 N.E.2d 1273, 1276 (Ind.Ct.App. 1998); *Daub,* 629 N.E.2d at 877).

Dr. Hastings, the only medical expert to offer testimony, opined that Hawkins' activities, including her racing of ATVs, "are not likely to extend the injury from one grade to another," absent some type of trauma. Tr. p. 240. Dr. Hastings testified that there was no evidence that Hawkins suffered any type of trauma from her post-accident racing activities. Moreover, on cross-examination he provided the following explanation as to why he did not instruct Hawkins to stop racing ATVs following the injury she sustained in the automobile accident:

Q: Doctor, . . . if it continually hurts and makes it worse, do you tell people, don't do that, you know, if doing this hurts, then don't do that?

A: Well, I hear a lot of doctors say that, and it makes sense in part. If I think it's going to cause them damage[,] then, yes. I tell them to do that. If I think it causes symptoms but they can tolerate it and it's important for them to tolerate it, I don't necessarily discourage them. . . . For example, I have a bad knee. I have arthritis in my knee. It kills me. I can't ski as long, but I haven't given up skiing. I still like to ski, and I still try to do it. So if it's something that's important to someone, as long as I think it's not going to radically . . . change what they can do, I don't necessarily tell them not to do it. I don't think it's very practical. I don't think they'll do it anyway, you know? I see golfers in my practice, tennis people that hurt. That's part of their life. That's part of their mental health. And if that's what it takes and they like to do it, I understand. It's kind of the easy answer, don't do it if it hurts. But for every person it's different. It has a different resonance.

*Id.* at 241–42.

In sum, Hawkins admitted that her pain worsened with activity, whether it be racing her ATV or picking up her infant son or pouring a glass of milk. She also testified that she took several precautions to avoid exacerbating her injury while racing, which included installing special equipment on her ATV and wearing prescribed braces. Hawkins' treating physician testified that he encouraged her to continue with life as normal and that the grade of her injury would not worsen due to her racing activities absent some type of traumatic injury from racing.[4] Based on the

---

4. Dr. Hastings provided the following testimony:

My own opinion is that it would take a major event to significantly change [the

foregoing, we cannot say that the trial court abused its discretion by granting Hawkins' motion for judgment on the evidence regarding Staton's affirmative defense of failure to mitigate damages.

## II. Instructional Errors

 Staton challenges the trial court's decision to refuse an instruction on failure to mitigate damages and to give an instruction regarding mistakes by treating medical personnel. In reviewing a trial court's decision to refuse or give a tendered instruction, this Court considers whether the instruction (1) correctly states the law; (2) is supported by the evidence in the record; and (3) is covered in substance by other instructions. *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893 (Ind.2002), *reh'g denied.* The trial court has discretion in instructing the jury, and we will reverse on the last two issues only when the instructions amount to an abuse of discretion. *Id.* Moreover, errors in jury instructions are harmless and do not require reversal where the verdict would have been no different had the jury been properly instructed. *Wilkinson,* 811 N.E.2d at 380.

 Both of the instructional errors raised by Staton turn on whether the instruction was supported by evidence in the record. Staton first argues that the trial court erred by refusing her failure to mitigate damages instruction. As discussed above, Staton did not present sufficient

evidence in support of this defense. Thus, the trial court did not abuse its discretion by refusing to instruct the jury on Staton's failure to mitigate damages defense.

Additionally, we note that the trial court gave a proximate cause instruction, which provided:

> If you find from a consideration of all of the evidence in this cause that the conditions and/or alleged injuries which Plaintiff complains of are unrelated to the collision or occurred as a direct result of any other cause independent of the collision at issue, then you should not consider such condition or alleged injury in your deliberations. A Defendant is responsible only for those injuries, damages, and medical expenses proved to be the result of the accident for which he is responsible.

Appellant's App. p. 41. The net result of this instruction is the same as that with the failure to mitigate damages instruction; namely, the jury could only award damages to Hawkins for those injuries that were a direct result of the collision and not those injuries that were produced by a cause independent of the collision, i.e., her ATV racing. Although there are differences in the failure to mitigate damages instruction and the proximate cause instruction, Staton argued the proximate cause instruction as a substitute for the rejected failure to mitigate damages instruction.[5] Albeit not in the form of a

---

wrist injury], you know. She has a somewhat weakened ligament and it may be a little bit more susceptible to stress or failure than a normal ligament, but it still would probably take a sudden load rather than just repetitive forceful grip[p]ing and use in the course of competitive racing.
Tr. p. 237.

5. Specifically, Staton argued as follows:
There is another instruction you are going to hear, you will hear right after [the] instruction on [proximate] cause. That in-

struction is going to say the following. If you find from a consideration of all of the evidence in this cause that the conditions and/or alleged injuries which Plaintiff complains of are unrelated to the collision or occurred as a direct result of any other cause independent of the collision at issue, then you should not consider such condition or alleged injury in your deliberations. Inflammation is definitely a condition.... It is just a choice she made [to continue racing ATVs]. A choice that she made, a

failure to mitigate damages instruction, Staton was able to argue her theory that Hawkins should not be compensated for the pain resulting from her racing of ATVs to the jury. Thus, we find no harm to Staton as a result of the trial court's refusal of Staton's failure to mitigate damages instruction.

█ Staton also alleges that the trial court erroneously instructed the jury by including Final Instruction No. 9, which provided:

> If [you] find that the plaintiff exercised reasonable care in securing competent medical personnel to treat her injuries, then the plaintiff may recover her entire damages, including damages caused by the original injury, and also any damages caused by the subsequent aggravation of the original injury, or the failure to minimize the original injury, flowing from the mistake of attending medical personnel.

Appellant's App. p. 43. In particular, Staton argues, "absolutely no evidence whatsoever supported this instruction." Appellant's Br. p. 15. While no one testified that Hawkins' attending medical personnel made a mistake *per se,* Dr. Hastings, on cross-examination, testified that he does not necessarily follow the belief espoused by other doctors, "if . . . doing this hurts, then don't do that." Tr. p. 241. Instead, he encourages his patients to live as normal of a life as possible so long as the patients' activities are not likely to cause further damage, even if that means the patient may be required to tolerate a little pain along the way. Because Dr. Hastings' views—by his own admission—diverge from those of some of his colleagues on what types of activities a person should participate post-injury, it would not be unreasonable for the jury to conclude that Dr. Hastings made a mistake by telling Hawkins to continue to live her life as she normally would, which included the racing of ATVs. Consequently, we cannot say that the trial court abused its discretion by instructing the jury regarding the impact of a mistake by attending medical personnel on the amount of damages recoverable by an injured plaintiff who relies on the mistaken advice.

Affirmed.

RILEY, J., and CRONE, J., concur.

---

choice that she knew that was going to happen. You can't tell me, you can't tell you, the evidence [won't] tell you that she didn't know what was going to happen every time she went out there. At least after the first time she rode. How many times did she ride, who knows. Thirty (30) races at least.
Tr. p. 311–12.