668 N.E.2d 1266 (1996)
In re the PATERNITY OF Anthony TIBBITTS.
Joannie TIBBITTS, Appellant-Respondent,
v.
Stephen WARREN, Appellee-Petitioner.
No. 71A04-9604-JV-132.
Court of Appeals of Indiana.
July 24, 1996.
*1267 Robert J. Palmer, May, Oberfell & Lorber, South Bend, for appellant.

OPINION
CHEZEM, Judge.

Case Summary
Respondent-Appellant, Joannie Tibbitts ("Mother"), appeals the trial court's decision to grant Petitioner-Appellee's, Stephen Warren's ("Father"), petition to change the surname of his son to "Warren" from "Tibbitts". We affirm.

Issue
Mother presents one issue for review, which we restate as: whether Father demonstrated that changing the child's name was in the child's best interest.

Facts and Procedural History
Mother and Father sought to establish paternity in their three-and-one-half year old child who was born to them out of wedlock. Paternity was established and the trial referee reserved the issue of whether the child's surname should be changed to that of Father's.[1] Hearing was held on the issue of name change and the trial court granted father's request that the child's last name be changed from "Tibbitts" to "Warren". Mother appeals.

Discussion and Decision
We examine what is in a name. The Magistrate ruled that the child be given the middle name of Tibbitts and the last name of Warren. This decision was based on the facts that Father is involved in the child's life, pays support, and has visitation. Father also argued that because he is a Potawatomi Indian, it is important that the child be given his last name. However, the Magistrate did not base the decision on Father's unique heritage. Mother argued that the child should keep her last name because the child's insurance, medical, and social security records are under the name of Tibbitts. Additionally, she argued, the child's friends and family know him as Tibbitts. She feels a change of name would be confusing to the child. The Magistrate did not find Mother's position to be compelling.
The arguments made by both Mother and Father appear to weigh equally. Conceivably, the Magistrate could have decided the issue either way. The Magistrate based the decision on what was in the best interest of the child. We will examine the policy choice made by the Magistrate, as well as the history of Indiana common law on the subject.
Upon a determination of paternity, both the mother and father potentially enjoy equal legal rights as parents with regard to issues of support, custody, and visitation. I.C. § 31-6-6.1-10 (1993). We have applied this notion of equality to the naming of the child. Matter of J.N.H., 659 N.E.2d 644, 646 (Ind.Ct.App.1995); Paternity of M.O.B., 627 N.E.2d 1317, 1318 (1994). Our common law is that when one legal parent contests a petition filed by the other to change the name of their minor child and paternity has already been established, the trial court must determine whether a name change is in the child's best interest. Garrison v. Knauss, 637 N.E.2d 160, 162 (Ind.Ct.App.1994); Paternity of M.O.B., 627 N.E.2d at 1318; D.R.S. v. R.S.H., 412 N.E.2d 1257 (Ind.Ct. App.1980). Beyond ensuring the child's continued welfare, this inquiry guarantees both parents an equal opportunity to assert their legal rights with regard to the naming of the child.
A biological father seeking to obtain the name change of his nonmarital child bears the burden of persuading the court that the change is in the child's best interests. Absent evidence of the child's best interests, the father is not entitled to obtain a *1268 name change. Paternity of M.O.B., 627 N.E.2d at 1318. We review the trial court's order in such cases under an abuse of discretion standard. Id. An abuse of discretion will be found only where the decision is clearly against the logic and effect of the facts and circumstances before the court or the court has misinterpreted the law. Id. We will not reweigh the evidence, and will view the evidence in the light most favorable to the appellee. D.R.S. v. R.S.H., 412 N.E.2d at 1266.
When a surname change is sought in a paternity action, the trial court may properly consider whether the child holds property under a given name, whether the child is identified by public and private entities and community members by a particular name, the degree of confusion likely to be occasioned by a name change and (if the child is of sufficient maturity) the child's desires. Id. Other factors which have been considered are the birth and baptismal records of the child, the school records of any older children, health records, and the impact of a name change when there are siblings involved whose name(s) would not be changed. Garrison, 637 N.E.2d at 160.
Evidence adduced with respect to the best interests of the child in this case indicates that the child had Mother's last name from birth until age 3½. His social security card was listed as Tibbitts, as were his health insurance records. He is known by friends and family as Tibbitts. Mother testified that the child did not want his name changed; however, due to the young age of the child, such testimony was correctly disregarded by the trial court. Father argues that it is in the best interest of the child to have his surname because he pays child support, has visitation, and is involved in the child's life. Additionally, Father is a Potawatomi Indian and claims that the child having his last name is relevant to the child's Indian heritage. The trial court weighed the competing interests stated by Mother and Father and found that it was in the best interest that the child be given Father's name.
Two recent cases examined this issue. In M.O.B., this court reversed a trial court's decision to give the child the father's name. The mother successfully argued on appeal that because the child's name was on U.S. savings bonds, a social security card, and because the child's family, community and certain organizations knew him by the mother's name, the child should retain her name. The father's argument that his surname was honorable was not considered enough to outweigh the considerations outlined by the mother. Because the father did not sustain his burden, it was held that the name change was not in the best interest of the child and that the trial court abused its discretion as a matter of law. Likewise, in Garrison v. Knauss, this court reversed a trial court's decision to give the children the father's name because the father had not met his burden of proving that the name change was in their best interests. The father argued that the name change would improve his paternal feelings toward the children.
The issue becomes, then, whether it is sufficiently in the best interest of the child to give the child its father's surname when the father pays support, has visitation, and is actively involved in the child's life. We held in D.R.S. v. R.S.H., 412 N.E.2d at 1265: "The weight of authority appears to be that absent extreme circumstances a father who exercises his parental rights has a protectable interest in his children bearing his surname and this interest is one quid pro quo of his reciprocal obligation of support and maintenance." Mother argues that she, too, pays support and provides for the child. Judge Shields, in her dissent in D.R.S. v. R.S.H., also noted that a mother-child relationship is equally affected as the father-child relationship by name affiliation. However, an examination of common law and of the differences between a mother-child and father-child relationship indicates that the mother-child relationship is less affected by the surname used by the child.
For instance, it is not necessary for a mother to come to court to establish her blood relationship to her own child. Nor is it necessary for anyone to petition the court to prove that a mother is the biological mother to a child. We know the origins of the *1269 mother-child relationship, inherently.[2] It is reasonable to say, due to the nature of that relationship, that something such as a name will not affect significantly the mother-child condition.
Such is not the case for a father. Although there is a presumption with regard to a father of a child born in wedlock, there is no presumption for a father of a child born out of wedlock ("CBOW"). In order for a CBOW to inherit from the father or to receive the benefits of support and visitation, the father must be legally determined. The father may voluntarily comply with his moral obligations with regard to a CBOW, but those actions are not legally enforceable unless the father is legally determined and paternity is established. This paternity determination is a very public act. Although the naming of the father achieves practical results, its necessity is symbolic of how very different the mother-child relationship is from the father-child relationship. The primary distinction lies in the fact that a father of a CBOW is legally determined, while the mother is not.
In determining the father of a CBOW, there are great implications for the child. The child is entitled to certain legal rights as a result of this determination. The child has those legal rights once the father is legally determined, regardless of whether the child is assigned the father's surname. However, because of the unique nature of the father-child relationship, a relationship that is not apparent from the onset when it involves a CBOW, many benefits flow to the child in such a situation, both tangible and intangible. Whether it is in the best interest for a CBOW to be given the father's surname when paternity has been established is an issue to be resolved on a case-by-case basis.
However, the indicators that complying with Father's request is in the child's best interest are that he does pay support, has visitation and participates in the life of his child. Moreover, he wants the child to share his name. This is conduct that society wants to encourage of men who father children outside of marriage.
Although we are not saying that in every case of a CBOW, the child should receive the surname of the father whose paternity has been established, it is not an abuse of discretion for the child to receive the father's surname when there is evidence that the natural father acknowledges and supports his CBOW, takes an interest in the child's welfare, and there are no factors which would make taking the father's name against the child's best interests. Such is the case here.
Affirmed.
DARDEN and NAJAM, JJ., concur.
NOTES
[1] Father's petition to establish paternity did not raise the issue of changing the child's name. However, the issue was raised at the paternity hearing and was reserved for decision at a later hearing, thereby giving Mother sufficient time to prepare a response.
[2] There are rare exceptions when a child's mother may not be identifiable, such as, when the child is abandoned at birth with no record of its birth. However, such situations are not common.