Jill PETERSEN, Appellant–Respondent,

v.

Marty A. BURTON, Appellee–Petitioner.

No. 41A01–0611–JV–517.

Court of Appeals of Indiana.

Aug. 17, 2007.

Richard C. Hersberger, Judy G. Hester, John W. Nelson, Brazill Hester, P.C., Indianapolis, IN, Attorneys for Appellant.

Daniel S. Vandivier, Hass Vandivier & Norris Franklin, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Jill Petersen ("Mother") appeals the trial court's denial of her verified motion to correct error. We affirm.

### Issue

Mother presents two issues, which we consolidate and restate as whether the trial court abused its discretion by denying Mother's verified motion to correct error.

### Facts and Procedural History

On October 8, 2002, Mother gave birth to a son, N.D.F. On October 24, 2002, Marty A. Burton ("Father") filed a verified petition to establish paternity of child and provide for support regarding N.D.F. Father also petitioned the court for a change of N.D.F.'s surname from Fulp to Burton. Paternity was established on March 31, 2003. On September 12, 2003, the trial court issued an initial order on the issues of custody, parenting time, and child support. On the issue of N.D.F.'s surname, the order states as follows:

> The Court does not find at this time that [it] is in the best interest of [N.D.F.] for his name to be changed. Father has developed no relationship, provided no support—either emotionally or financially, and presented no evidence regarding why it would be in [N.D.F.'s] best interest for the child to carry the surname of Burton.

> The Court *will*, specifically, reconsider Father's position regarding this issue if he can present evidence regarding the Court's concerns set forth above. The child has not even reached his first birthday, so the Court finds that ample time exists for Father to develop a traditional relationship with [N.D.F.] before the child is so entrenched with [the] name Fulp, that a name change would result in a dramatic impact on the child.

Appellant's App. at 18. The surname of Fulp is not Mother's surname by birth, nor is it her current surname. Rather it was her stepfather's surname, which she began using as a child. Mother has a teenaged

son, N.D.F.'s half-brother, who also goes by the name Fulp.

On April 3, 2006, Father filed a petition to revisit issue of change of name of child, which was set for hearing on July 10, 2006. On June 30, 2006, the trial court made an entry in the chronological case summary indicating that the name change issue would be heard on August 16, 2006. On July 10, 2006, the trial court heard argument from Father regarding his petition for name change. Having thought that the hearing was set for August 16, 2006, Mother was not prepared to address the issue. On July 17, 2006, the trial court issued an order which found, among other things, that "a [name] change is in the Child's best interest based on Father's testimony that sharing his name will increase the emotional bond between Father and the Child." Appellant's App. at 17. There is no transcript of the July 10, 2006, hearing.

On July 27, 2006, Mother filed a verified motion for relief from order, for reconsideration, and for rehearing. She also filed a motion to correct error on August 14, 2006. The trial court held a hearing on both motions on August 16, 2006, at which both parties were given the opportunity to present evidence regarding the name change issue. On October 2, 2006, the trial court issued an order denying Mother's verified motion to correct error, stating in relevant part,

1. The Court notes that Mother presented some evidence at the hearings on July 10, 2006, and on August 16, 2006, that the child holds property and is known in the community with the last name "Fulp." While it will require some effort to change property, school, and health records as a result of a name change, the child is not yet four years of age. Certainly any confusion as a result of a name change can be minimized in light of the child's tender years. The child has not yet begun his formal schooling nor undertaken employment.

2. The Court further notes that "Fulp" is not Mother's birth name nor her current name, but rather, the name of a former stepfather with whom she remains close. And while the court does not wish to minimize the importance of either this "grandfatherly" figure or the child's half-sibling, the combined interests of the child and Father in their relationship carry more weight than the child's connection to either of the other cited individuals. The Court recognizes that Mother testified that she proposed a hyphenated last name of "Fulp–Burton." This indicates that Mother is prepared to, at a minimum, cope with any confusion as a result of a name change, so long as the change is not to "Burton" alone. Mother also cited Father's failings in his ability to parent and/or support the child as a basis for denying the request. Mother is correct that this Court's previous order stated that Father's request for a name change would be evaluated in light of his performance as a Father. Father's "performance," while not flawless, does demonstrate a genuine desire to form a parent-child relationship with the child. That notwithstanding, the statutory standard is the child's "best interests."

3. The Court **FINDS** that Father met his burden on this issue and therefore **DENIES** Mother's Verified Motion to Correct Error.

*Id.* at 14–15. Mother now appeals.

### Discussion and Decision

 Mother argues that the trial court erred in denying her motion to cor-

rect error. Our standard of review is well settled. The trial court's decision on a motion to correct error comes to an appellate court cloaked in a presumption of correctness, and the appellant has the burden of proving that the trial court abused its discretion. *Page v. Page*, 849 N.E.2d 769, 771 (Ind.Ct.App.2006). A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to the law. *In re Paternity of P.E.M.*, 818 N.E.2d 32, 39 (Ind.Ct.App. 2004). In making our determination, we may neither reweigh the evidence nor judge the credibility of witnesses. *Id.* "Instead, we look at the record to determine if: (a) the trial court abused its judicial discretion; (b) a flagrant injustice has been done to the appellant; or (c) a very strong case for relief from the trial court's order has been made by the appellant." *Page*, 849 N.E.2d at 771. Of course, the circumstances under which the order granting the name change was entered are also relevant to our review. In ruling on a petition to change the name of a minor child, the trial court shall consider what is in the best interests of the child. *In re Change of Name of Fetkavich*, 855 N.E.2d 751, 756 (Ind.Ct.App.2006).

In her appellate brief, Mother argues that there is a statutory presumption in her favor. Indiana Code Section 34–28–2–4(d) states, in relevant part, that in determining whether to grant a petition for name change of a minor child, the trial court shall consider the best interests of the child, and the trial court shall recognize a presumption in favor of the parent who "(1) has been making support payments and fulfilling other duties in accordance with a decree issued under [the dissolution, child support, or custody and parenting time statutes]; and (2) objects to the proposed name change of the child." Mother claims that the trial court should

have given her the benefit of this statutory presumption and that Father should have therefore been required to present "clear and convincing evidence" supporting the change of N.D.F.'s name. Appellant's Br. at 9. Father counters, and we agree, that, as the statute currently reads, the presumption applies only to noncustodial parents who satisfy the statutory requirements.

Indiana Code Section 34–28–2–4(d) states that in order to qualify for the presumption, a parent must be making "support payments and fulfilling other duties in accordance with a decree," such as a custody or child support order. While custodial parents certainly provide financial support and perform other duties for their children, it is only noncustodial parents who actually make support payments pursuant to the terms of a court order. Thus, the plain language of the statute supports Father's position here. We also note that on the rare occasion that this Court has applied the statutory presumption at issue, it has been applied in favor of a noncustodial father who objected to the name change proposed by his child's custodial mother. *See Fetkavich*, 855 N.E.2d at 756; *In re Petition of Meyer*, 471 N.E.2d 718, 721 (Ind.Ct.App.1984). Our research did not reveal any cases where the presumption has been applied to a custodial parent. For these reasons, we conclude that the presumption created in Indiana Code Section 34–28–2–4(d) does not apply to Mother, the custodial parent, in this case. Limiting the application of this statutory presumption to noncustodial parents, primarily fathers, who object to proposed name changes may appear to be outdated in light of modern attitudes and practices regarding the surnames of children born out of wedlock. However, it is for the legislature, not the judiciary, to

make any revisions it may feel are appropriate in this regard.

In the absence of a statutory presumption, Father was simply required to present to the trial court sufficient evidence in support of his petition. "A biological father seeking to obtain a name change of his nonmarital child bears the burden of persuading the court that the change is in the child's best interests. Absent evidence of the child's best interests, the father is not entitled to obtain a name change." *In re Paternity of Tibbitts*, 668 N.E.2d 1266, 1267–68 (Ind.Ct.App.1996), *trans. denied* (1997). In *Tibbitts*, the mother of a child born out of wedlock appealed the trial court's grant of the father's petition for change of the child's surname. In that case, the child had shared his mother's last name for the first three and one-half years of his life. His social security card and health records were listed under that name. His family and friends knew him by that name. The father argued that it was in the best interests of his child to have his surname because he paid child support, exercised visitation, and was actively involved in the child's life. *Id.* at 1268.

Similar to Mother in the instant case, the mother in *Tibbitts* argued that she also provided financial support for the child and was actively involved in his life. We noted, however, that the mother-child relationship is generally less affected by the child's surname:

> [I]t is not necessary for a mother to come to court to establish her blood relationship to her own child. Nor is it necessary for anyone to petition the court to prove that a mother is the biological mother to a child. We know the origins of the mother-child relationship, inherently. It is reasonable to say, due to the nature of that relationship,

that something such as a name will not affect significantly the mother-child condition.

> Such is not the case for a father. Although there is a presumption with regard to a father of a child born in wedlock there is no presumption for a father of a child born out of wedlock ("CBOW"). In order for a CBOW to inherit from the father or to receive the benefits of support and visitation, the father must be legally determined.... Although the naming of the father achieves practical results, its necessity is symbolic of how very different the mother-child relationship is from the father-child relationship. The primary distinction lies in the fact that a father of a CBOW is legally determined, while the mother is not.

> .... Whether it is in the best interest for a CBOW to be given the father's surname when paternity has been established is an issue to be resolved on a case-by-case-basis.

> However, the indicators that complying with Father's request is in the child's best interest are that he does pay support, has visitation and participates in the life of his child. Moreover, he wants the child to share his name. This is conduct that society wants to encourage of men who father children outside of marriage.

*Id.* at 1269.

The same reasoning applies here, as we agree with the trial court that "Father's 'performance,' while not flawless, does demonstrate a genuine desire to form a parent-child relationship with [N.D.F.]." Appellant's App. at 15. Father has consistently paid child support and portions of his arrearage as ordered by the trial court

since July 2004.[1] Father has also exercised visitation on a fairly regular basis in the one-year period leading up to this hearing.[2] Regarding the reason he petitioned for a name change for N.D.F., Father testified in part as follows:

Q: ... you essentially believe the name change is in [N.D.F.]'s best interest because it would increase the emotional bond that you share with him?

A: Yes.

Q: By that are you suggesting to the Court that it would help you to be a better parent?

A: No I'm not suggesting that at all. I'm suggesting that it will create a tie between myself and [N.D.F.], that will continue on so that I am not, so that he doesn't look at me like a friend of the family or an uncle or something that he gets to go [stay] with every now and then. It is to show him that we are father and son.

. . . .

Q: ... [D]o you have anything else you want to say about what, how important the name change is to you and how important you think it will be to [N.D.F.] as he grows older?

A: I think that it will be real important because it just, lets him know who his father is, there has not been, just until recently when Ms. Peter-

son was re-married, there has not [been] a whole lot of male involvement with [N.D.F.] or his brother [K.F]. It has all come from family members. And I don't want to have my son go through life not being connected with his father as an identity, you know. I want him to be proud of the name. I want him to be proud of who his father is. And I think with doing this now gives him plenty of time for everybody to adjust, will make us a better father [son] combination.

Tr. at 40, 44–45.

Mother argues that Father's explanation for his desire to change his son's surname is less like the father's explanation in *Tibbitts* and more like the fathers' explanations in *In re Paternity of M.O.B.*, 627 N.E.2d 1317 (Ind.Ct.App.1994), and *Garrison v. Knauss*, 637 N.E.2d 160 (Ind.Ct. App.1994). In *M.O.B.*, the biological father of M.O.B., a child born out of wedlock, testified that M.O.B. was his only son and that he wanted M.O.B. to "carr[y] on" the father's "honorable" surname. 627 N.E.2d at 1319. In *Garrison*, the father testified that it was in his children's best interests "for-just for-that paternal feeling that they are my children." 637 N.E.2d at 161. In each of these cases, this Court found that the trial court had abused its discretion in ordering the children to assume their father's surname because the father's desire to change his children's surname was

---

1. Mother makes much of the fact that the trial court issued a garnishment order in January 2005. While this may be true, the fact remains that Mother receives $220.00 each week from Father's paycheck ($205.00 child support plus $15.00 toward arrearage), and he is therefore satisfying his financial obligation and has been for quite some time.

2. Father testified that earlier in N.D.F.'s life, the court ordered visitation to occur "[b]y

agreement of both parties." Exhibit A. Father stated that he has "never been able to get much of an agreement out of [Mother,]" a situation that limited his parenting time with N.D.F. At the time of the hearing, Father was optimistic that the trial court's order applying the Indiana Parenting Time Guidelines would allow him to exercise his visitation rights on an even more consistent basis. Tr. at 47–48.

based on the best interests of *the father* rather than the best interests of the children.

In the instant case, Mother contends that Father's testimony in support of his petition to change N.D.F.'s surname likewise expressed only his "paternal feelings." Appellant's Br. at 11. She also claims that the trial court applied the wrong standard in its review of the evidence because it considered "the combined interests of the child and Father in their relationship" in its order denying her motion to correct error. Appellant's App. at 15. We disagree on both points.

We find Father's testimony in the instant case distinguishable from the fathers' statements in *M.O.B.* and *Garrison.* Here, Father's testimony reflects his belief that his son will experience pride in himself and a greater feeling of connection to Father by sharing Father's surname. He explained that having Father's surname will help four-year-old N.D.F. to understand from this early age that Father is more than just a "friend of the family." Tr. at 40. We think these statements show that Father is focused upon his son's best interests rather than his own. Moreover, the benefits that N.D.F. will experience from an increase in Father's paternal feelings should not be discounted simply because the feelings may also positively affect Father. *See Garrison,* 637 N.E.2d at 162 ("children [born out of wedlock] would benefit from the positive 'paternal feeling' they would get from knowing that society would recognize and accept them as their father's children.") (Robertson, J., dissenting). It appears that this concept was considered by the trial court as evidenced by its reference to "the combined interests" of Father and N.D.F. See Appellant's App. at 15. The trial court correctly stated in the same order that "the statutory standard is in the child's 'best interests[,]' "

and therefore, we do not agree with Mother that the trial court incorrectly applied the law in this case.

In sum, there is evidence that Father's parenting, while admittedly not perfect, has improved significantly since paternity was established in 2003. He provides consistent financial support for his son, and he exercises regular visitation. His testimony expresses his desire to continue to improve his relationship with N.D.F. There is evidence that using Father's surname will provide immediate emotional benefits to N.D.F. and will likely encourage the growth of stronger ties between Father and N.D.F. We conclude that the trial court did not err in denying Mother's motion to correct error.

Affirmed.

BAKER, C. J., and FRIEDLANDER, concur.