**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARK R. REGNIER**
Bingham Farrer & Wilson PC
Elwood, Indiana

ATTORNEY FOR APPELLEE:

**ANGELA WARNER SIMS**
Hulse, Lacey, Hardacre,
Austin, & Sims, P.C.
Anderson, Indiana



FILED
Dec 10 2012, 10:42 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE PATERNITY OF E.M.T. | ) | |
| | ) | |
| C.J.G., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  48A02-1203-JP-260 |
| | ) | |
| M.C.T., | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C04-1108-JP-203

**December 10, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

After executing a paternity affidavit and verifying that he was the natural father of E.M.T., C.J.G. (Father) sought to establish his support obligation, obtain increased parenting time, and change E.M.T.'s surname. The trial court granted Father's requests in part but refused to change E.M.T.'s name. Father appeals the denial of his motion to correct errors on this issue, claiming that the trial court erred by denying his request.

We conclude that the trial court did not err in finding that Father failed to prove that the requested surname change would be in E.M.T.'s best interests. Accordingly, we affirm the judgment of the trial court.

FACTS

E.M.T. was born on June 8, 2011. The next day, M.C.T. (Mother) and Father, both minors themselves,[1] executed a paternity affidavit at the hospital where E.M.T. was born. In relevant part, the paternity affidavit stated, "It is our mutual desire that the name of our child on the Indiana Certificate of Birth shall be recorded as [E.M.T.]." Ex. 2 p. 5.

On August 5, 2011, Father submitted a verified petition requesting genetic testing and seeking an order establishing parenting time, child support, and for E.M.T.'s surname to be changed to Father's surname. The trial court ordered genetic testing, which confirmed that Father was the natural father of E.M.T.

At a hearing on Father's remaining requests, Mother and Father stipulated to paternity. Although Father admitted that the paternity affidavit stated that it was the "mutual desire" of both parties for E.M.T. to be given Mother's surname, both he and

---

[1] Mother and Father were both sixteen years old at the time of E.M.T.'s birth. As they are still minors, their names have been abbreviated pursuant to Indiana Administrative Rule 9.

Mother testified that they had not discussed what surname to give E.M.T.  Tr. p. 22. Father stated that he thought E.M.T. would have his surname "because [he is] the father." Id. at 10.  Mother testified that she had decided that E.M.T. should have her surname because she "just felt it would be better" because she and Father were so young.  Id. at 30.  She also testified that she had already secured a number of documents and benefits for E.M.T. under her surname, including a social security card, birth certificate, and insurance benefits.

The parties also testified about Father's relationship with E.M.T.  This testimony revealed that from the time of E.M.T.'s birth until Father filed his petition, Father exercised approximately fifteen to twenty hours of parenting time per week.  This parenting time was supervised due to Father's youth and inexperience in parenting.[2] Father also attended E.M.T.'s doctor's appointments when he was notified of them. Mother testified that she believes Father wants to be in E.M.T.'s life.

At the time of the hearing, Father had not yet provided Mother with any monetary support, but he stated that it was his intention to pay support and to reimburse Mother for a portion of the expenses she had already incurred.  Father also stated that when he found out that Mother was pregnant, he sought and obtained part-time employment.  Father submitted a child support worksheet to the court that attributed minimum wage income from full-time employment to him, even though Father is unable to work full-time hours and in fact, like Mother, still attends high school full-time.  Mother testified that the only

---

[2] Although E.M.T. lives with Mother, Mother is also supervised by an adult when she cares for E.M.T.

support she had received from Father consisted of several boxes of diapers and an outfit or two.

The paternity decree issued by the trial court stated, in part, "[a]s agreed in writing by the parties at the time of birth, [E.M.T.'s] last name is, and shall remain [Mother's surname]." Appellant's App. p. 6. Father filed a "Motion to Reconsider and to Correct Errors," claiming among other things that he had not intended to agree for E.M.T. to have Mother's surname, but because he had wished to establish paternity at the time of E.M.T.'s birth, he had signed the paternity affidavit. Father further claimed that E.M.T. "is less than one (1) year old and such a name change, to accommodate and acknowledge Father, would not cause any burden or harm to [E.M.T.]." Id. at 10 (emphasis added). The trial court granted Father's motion to correct errors in part but denied Father's request to change E.M.T.'s surname. Father now appeals.

## DISCUSSION AND DECISION

A trial court's decision on a motion to correct error "comes to an appellate court cloaked in a presumption of correctness" and is reviewed only for an abuse of discretion. Petersen v. Burton, 871 N.E.2d 1025, 1028 (Ind. Ct. App. 2007). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances before the court or the court has misinterpreted the law. In re Paternity of Tibbitts, 668 N.E.2d 1266, 1268 (Ind. Ct. App. 1996). Additionally, when the trial court makes no special findings of fact or conclusions of law thereon, we presume that the trial court correctly followed the law. In re H.M.C., 876 N.E.2d 805, 808 (Ind. Ct. App.

4

2007). We do not reweigh the evidence or assess the credibility of the witnesses, and we view the evidence in the light most favorable to the judgment. Tibbitts, 668 N.E.2d at 1268.

At the outset, we note that the prior agreement of parents regarding the name of their minor child is not a proper basis by which a trial court should determine whether a child's surname should be changed. See In re Paternity of J.C., 819 N.E.2d 525, 528 (Ind. Ct. App. 2004) (remanding for consideration of the best interests of the child when the trial court gave a child his paternal surname because there was no evidence that the parties had agreed for the child to keep the mother's surname). Rather, a biological father seeking to change the surname of his non-marital child bears the burden of persuading the trial court that the change is in the child's best interests. Paternity of M.O.B., 627 N.E.2d 1317, 1318 (Ind. Ct. App. 1994); see also Ind. Code § 34-28-2-4(d). Absent evidence of the child's best interests, the father is not entitled to obtain a name change. M.O.B., 627 N.E.2d at 1318.

In considering whether a change of surname is in the best interests of a child, the trial court may properly consider a variety of factors, including whether the child is identified by public and private entities and community members by a particular name, the degree of confusion likely to be occasioned by a name change, the birth, baptismal, health, and other records of the child, and the impact of a name change on the child and any siblings when the siblings' names would not be changed. Id.; Tibbitts, 668 N.E.2d at 1268. Finally, the trial court may consider whether the non-custodial parent supports the

5

child, exercises parenting time, and is actively involved in the life and welfare of the child. Tibbitts, 668 N.E.2d at 1269.

In the instant case, Mother presented evidence that she had already secured a number of identifying documents for E.M.T. under her surname. Tr. p. 46. E.M.T.'s birth records and insurance coverage also carry Mother's surname. Id. Mother testified that she had decided that E.M.T. should have her surname because she "just felt it would be better" given her and Father's minority. Id. at 30. Although Mother did not explain what she meant would be better or for whom, we consider this evidence in the light most favorable to the judgment and assume that Mother meant it would be better for E.M.T. to have her surname.

Regarding Father's support of E.M.T. and involvement in E.M.T.'s life, some evidence was presented in support of Father's petition. This evidence included that Father has consistently exercised supervised parenting time with E.M.T. and had attended most of E.M.T.'s doctor appointments. Tr. p. 11, 21, 30. Additionally, Father had provided Mother with a couple of outfits and several packages of diapers, and Father had obtained part-time employment in anticipation of providing support to Mother for E.M.T. and indeed intended to provide monetary support to Mother in the future. Id. at 14, 20, 33. However, Father's involvement and his support of E.M.T. are only two factors among many. In light of the factors indicating that a change of surname would not be in E.M.T.'s best interests, we cannot say that these factors in Father's favor are sufficient for us to conclude that the trial court erred.

Moreover, there was some evidence that Father's desire for a change in E.M.T.'s surname was self-motivated rather than sought in the best interests of E.M.T. At the hearing, the only reason that Father gave for wanting E.M.T. to have his surname was that he was E.M.T.'s father. Tr. p. 10. And in Father's motion to correct errors, he asked the trial court to reverse its previous decision and give E.M.T. Father's surname "to accommodate and acknowledge Father." Appellant's App. p. 10. Rather than argue specific reasons why such a name change would be in E.M.T.'s best interests, Father merely argued that due to E.M.T.'s young age, a change in his surname "would not cause any burden or harm" to E.M.T. Id.

Yet, even proving that E.M.T. would suffer no burden or harm by a change in his name does not satisfy Father's burden to prove the change is in E.M.T.'s best interests. See M.O.B., 627 N.E.2d at 1318 (reversing the trial court's decision to give a child the paternal surname where the only evidence supporting the change was that the father would have liked for his "honorable name" to be carried on). Here, we presume that the trial court considered the best interests of E.M.T. and conclude that the trial court must have determined that Father failed to carry his burden of proving that the name change was in E.M.T.'s best interests. In this regard, we cannot say that the trial court erred.

The judgment of the trial court is affirmed.

BRADFORD, J., concurs.

ROBB, C.J., concurs in result without an opinion.