Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**JAIME L. CAIRNS**
Cairns & Rabiola, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**STEVEN J. BRUCE**
Bruce & Bruce
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| C.B., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1308-JP-677 |
| | ) | |
| G.N., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Kimberly S. Dowling, Judge
Cause No. 18C02-1203-JP-104

**March 14, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

C.B. ("Mother") appeals the Delaware Circuit Court's order requiring M.D.B. to assume the surname of his father, G.N. ("Father"). Mother presents for our review a single issue: whether the trial court abused its discretion when it granted Father's request for the child's surname to be changed to Father's surname.

We affirm.

**Facts and Procedural History**

Mother and Father were involved in a romantic relationship, and during the course of the relationship, Mother became pregnant. During Mother's pregnancy, Mother and Father's relationship ended, and Mother relocated from Delaware County to Hamilton County without notifying Father. Prior to the birth of the child, on March 20, 2012, Father filed a verified petition to establish paternity of the unborn child. M.D.B. was born out of wedlock on March 27, 2012. Neither Mother nor any member of Mother's family contacted Father to notify him of the labor or birth. On April 20, 2012, the trial court held an initial hearing on Father's motion to establish paternity, at which Mother requested DNA testing be performed to determine paternity of M.D.B. The paternity test was conducted on August 29, 2012, and the results confirmed that M.D.B. is Father's child.

On October 1, 2012, when M.D.B. was about six months old, Father filed a petition to establish custody, visitation, and child support. On November 16, 2012, Mother and Father appeared before the trial court for a preliminary hearing on the issue of parenting time. On January 7, 2013, the parties entered into a preliminary order setting forth the parties' parenting time, transportation, and child support obligations.

2

Father subsequently requested that the trial court change M.D.B.'s surname to Father's surname. On May 29, 2013, when M.D.B. was fourteen months old, the trial court held a hearing on Father's request to change M.D.B.'s surname. At the hearing, Father testified that he wished for M.D.B. to have his last name because he is fifty-two years old, and M.D.B. is his only child. Mother testified that she did not believe the name change was in M.D.B.'s best interest because M.D.B. was learning his name and because his name was listed on his medical records, Social Security card, passport, and a savings account.

On May 31, 2013, the trial court issued an order which provided, in relevant part:

4. Neither party presented any evidence that the child owns or holds any property in his own name.

5. Neither party presented any evidence that the child is identified by public and private entities and community members by a particular name.

6. While Mother testified that the child identifies with his name and is learning his name, the Court finds that the child is fourteen (14) months, and would not experience any confusion if the Court changes his last name to Father's last name.

7. The child is not of a sufficient age to express his own opinion regarding the changing of his last name.

8. Neither party testified that there are any baptismal records in the child's current name.

9. There are no school records in the child's current last name.

10. There are health records, daycare records, passport, savings account and social security card currently in the child's last name. Those records/documents would need to be changed if the Court were to change the child's last name.

3

11. Father has no other children. Mother did not address whether or not she has any other children and whether a name change would affect those children.

12. While Mother testified that Father had only paid a total one-time payment of Five Hundred ($500) Dollars toward [M.D.B.]'s support, the Court does not find this argument to be a persuasive reason to deny the name change. The payment was made at the time that Father was hiring counsel and the paternity action was being filed. Father elected to have the Court set a support amount in order to establish a child support account to establish a formal record of payment.

13. Father filed the Petition to Establish Paternity voluntarily and pursued a hearing with regard to parenting time. Father has consistently exercised his parenting time since the temporary order was entered.

14. Father has no other children and desires for his son to carry his last name.

15. The Court finds that it is in the best interest of the minor child to carry Father's last name.

Appellant's App. pp. 12-13.

Mother filed her motion to correct error on June 28, 2013. The trial court denied Mother's motion to correct error on July 24, 2013. Mother now appeals.

**Discussion and Decision**

We review the trial court's decision to change a child's name using an abuse of discretion standard. In re Paternity of J.C., 819 N.E.2d 525, 528 (Ind. Ct. App. 2004). A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. Petersen v. Burton, 871 N.E.2d 1025, 1028 (Ind. Ct. App. 2007).

A father seeking a surname change for his non-marital child must prove that the change is in the child's best interest. Id. at 527. In determining the best interest of the

4

child, the trial court may properly consider "whether the child holds property under a given name, whether the child is identified by public and private entities and community members by a particular name, the degree of confusion likely to be occasioned by a name change[,] and (if the child is of sufficient maturity) the child's desires." Paternity of M.O.B., 627 N.E.2d 1317, 1318-19 (Ind. Ct. App. 1994). Absent evidence of the child's best interest, the father is not entitled to obtain a name change. See In re Paternity of Tibbitts, 668 N.E.2d 1266, 1267-68 (Ind. Ct. App. 1996), trans. denied. However, "it is not an abuse of discretion for the child to receive the father's surname when there is evidence that the natural father acknowledges and supports [the child], takes an interest in the child's welfare, and there are no factors which would make taking the father's name against the child's best interests." Id. at 1269.

Mother first argues that the trial court improperly placed the burden of persuasion that the child's name should not be changed on Mother. To support her claim, Mother points to the trial court's order, which states that Father's lack of consistent payment of child support was not a "persuasive reason to deny the name change." Appellant's App. p. 13. She asserts that "[t]he trial court committed reversible error by placing the burden incorrectly on Mother and by ignoring Father's *de minimis* financial support." Appellant's Br. at 8. While we agree that Mother's interpretation of the trial court's statement is not an unreasonable one, we note that the trial court's statement to which Mother refers may also be interpreted as an observation by the trial court regarding the relative weight to be assigned to the evidence presented by the parties. Because we presume that the trial court knew and followed the law, imposing the burden on Father as

5

it was required to do, we find no reversible error here. See Ramsey v. Ramsey, 863 N.E.2d 1232, 1239 (Ind. Ct. App. 2007). As to Mother's assertion that the trial court improperly "ignore[d] Father's ability to pay child support," this court has held that "a father's performance with respect to parent-child involvement and financial support need not be perfect in order to be credited in a name change proceeding." C.B. v. B.W., 985 N.E.2d 340, 345 (Ind. Ct. App. 2013), trans. denied. Mother's claim here is merely a request to reweigh the evidence, which we will not do. See McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005).

Mother also asserts that the trial court's order contains findings that are unsupported by the evidence. Specifically, Mother argues that the trial court "incorrectly found that neither party had presented evidence that the child was known by public and private entities by his name" and that "[t]his finding was not supported by the evidence because Mother testified that the child's medical records, social security card, passport, and savings account had Mother's surname." Appellant's Br. at 3-4. Mother further argues that the trial court erred when it found that M.D.B. held no property in his name, since "Mother testified, and Father did not contest, that the child had a bank account in his name." Appellant's Br. at 6. While we acknowledge that the two findings to which Mother objects may draw tenuous inferences, the trial court included in its order several other findings supported by the record and sufficient to support its conclusion that a name change was in M.D.B.'s best interest, and, importantly, this court has held that "it is not necessary that every finding support the trial court's conclusion." See C.B., 985 N.E.2d at 345. Furthermore, the trial court also acknowledged in its order that "[t]here are health

records, daycare records, passport, savings account and social security card currently in the child's last name." Appellant's App. p. 12. Therefore, any error by the trial court here was harmless. See J.M. v. N.M., 844 N.E.2d 590, 599 (Ind. Ct. App. 2006) (quoting Lasater v. Lasater, 809 N.E.2d 380, 397 (Ind. Ct. App. 2004)) ("To the extent that the judgment is based on erroneous findings, those findings are superfluous and are not fatal to the judgment if the remaining valid findings and conclusions support the judgment.").

Finally, Mother claims that the evidence, taken as a whole, fails to support the trial court's conclusion that a name change is in M.D.B.'s best interest. Mother emphasizes that the only testimony provided by Father as to the reason he sought the name change was that M.D.B. was his only child, and Father himself desired the name change. Mother notes that she, on the other hand, presented evidence that M.D.B. was learning his name, that he was known in the community by his name, that M.D.B.'s name was listed on his medical records, Social Security card, passport, and savings account, and that Father had paid only $500 in child support since M.D.B.'s birth. Mother argues that the facts of this case are very similar to those in In re Paternity of M.O.B., 627 N.E.2d 1317 (Ind. Ct. App. 1994) and Garrison v. Knauss, 637 N.E.2d 160 (Ind. Ct. App. 1994).

In M.O.B., the biological father of M.O.B., a child born out of wedlock, sought a name change for M.O.B. and testified before the trial court that M.O.B. was his only son and that he wanted M.O.B. to "carr[y] on" the father's "honorable" surname. 627 N.E.2d at 1319. On appeal, our court noted that Father "failed to present *any* evidence that the name change was in the best interests of M.O.B." and concluded that the trial court had abused its discretion in ordering that the child assume its father's surname because the

7

father's desire to change his child's surname was based on the best interests of the father rather than the best interests of the child. M.O.B., N.E.2d at 1319 (emphasis in original).

In Garrison, a father seeking a name change for his children testified that he desired the name change 'for—just for—that paternal feeling that they are my children.'" 637 N.E.2d at 161. The trial court granted the father's request, and this court reversed, observing that the trial court made statements at the hearing that indicated that the trial court improperly based its decision, at least in part, not on a finding that a name change would be in the best interests of the children but, rather, on its own belief that a child bearing her mother's name, instead of her father's, would be stigmatized as a child born out of wedlock. Id. at 161-62.

Contrary to Mother's assertion, the facts of the present case are distinguishable from those in Garrison and M.O.B. While Father did state that he wished for M.D.B. to carry on his surname, this was not the only evidence presented to the trial court regarding whether a name change would be in the child's best interest. The trial court noted in its order that M.D.B. was fourteen months old at the time of the order and would not experience any confusion resulting from the name change; that Father has no other children; that, despite Father's single child support payment, he had requested that the trial court set a support amount; that Father had voluntarily filed a petition to establish paternity; that Father had consistently exercised parenting time; and, ultimately, that it was in the child's best interest to carry Father's last name. This evidence sufficiently supports the trial court's conclusion that Father has M.D.B.'s best interests in mind. See Tibbitts, 668 N.E.2d at 1269 ("[T]he indicators that complying with Father's request is in

8

the child's best interest are that he does pay support, has visitation and participates in the life of his child. Moreover, he wants the child to share his name. This is conduct that society wants to encourage of men who father children outside of marriage."); see also Petersen v. Burton, 871 N.E.2d 1025, 1031 (Ind. Ct. App. 2007) (finding evidence of a "genuine desire to form a parent-child relationship" sufficient to support a name change where Father has "consistently paid child support and portions of his arrearage as ordered by the trial court" and has regularly exercised parenting time.)

Mother's claim amounts to a request that we reweigh the evidence, which we will not do. See McHenry, 820 N.E.2d at 126. The trial court was in the best position to evaluate Father's credibility and level of commitment to M.D.B.'s best interests. See Redd v. Redd, 901 N.E.2d 545, 549 (Ind. Ct. App. 2009) ("We generally give considerable deference to the trial court's findings in family law matters because the trial court is in the best position to become acquainted with the relationship between parents and their children."). And in its determination of the best interests of the child, the trial court was not limited to consideration of Father's testimony. Rather, the trial court "may, and should, consider any relevant and probative facts and circumstances before the court, and may draw reasonable inferences from those facts and circumstances." C.B., 985 N.E.2d at 346. Under the facts and circumstances before us, we cannot say that the trial court abused its discretion in concluding that changing M.D.B.'s surname was in the child's best interests, where it considered, among other factors, Father's persistence in pursuing a relationship with his child, his willingness to financially support the child, his

9

lack of other children, and the effect of a name change on M.D.B.  Therefore, we find no reversible error.

## Conclusion

For all of these reasons, we conclude that the trial court did not abuse its discretion when it ordered that M.D.B. assume Father's surname.

Affirmed.

BRADFORD, J., and PYLE, J., concur.