## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 19 2017, 9:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Davina L. Curry
The Curry Law Firm, LLC
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Jessie D. Fields
Certified Legal Intern

Kele M. Bosaw
Owens Bosaw, P.C.
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of N.R., Selena G. Robey, *Appellant-Respondent,* <br><br> v. <br><br> Susan Beetham, *Appellee-Intervenor.* | December 19, 2017 <br><br> Court of Appeals Case No. 55A01-1707-JP-1706 <br><br> Appeal from the Morgan Circuit Court <br><br> The Honorable Matthew G. Hanson, Judge <br><br> Trial Court Cause No. 55C01-1609-JP-396 |

**Mathias, Judge.**

[1] Selena Robey appeals the order of the Morgan Circuit Court granting a petition to change the last name of Robey's minor son, N.R., to that of his late father.

We affirm.

## Facts and Procedural History

N.R. is the biological son of Selena Robey ("Selena") and Jacob Searcy ("Jacob"). Jacob was the son of Susan Beetham ("Susan"), N.R.'s paternal grandmother. Selena and Jacob had a relationship that was "off and on" for ten years. Tr. p. 15. At the time that N.R. was conceived, Selena was married to another man, Jonathan Robey ("Jonathan"). Selena has been married twice before and, including her maiden name, has had four last names. Selena had a daughter with one of her ex-husbands, and that daughter has the last name of her father, i.e. Hayes.

N.R. was Jacob's first child. Jacob was very proud of having a son and desired to be a part of the child's life. Despite the fact that Jacob was N.R.'s father, Selena decided to give her son the surname Robey, the same as her and her current husband.

On September 14, 2016, Jacob filed a petition to establish his paternity of N.R., which included a request that the court change the child's last name to Searcy. On September 21, 2016, Jacob was murdered in his home. On October 6, 2016, Jacob's mother, Susan, filed a motion to intervene in the paternity action, which the trial court granted that same day. Susan also sought grandparent visitation.

A hearing was held on March 7, 2017, at which DNA evidence was presented showing that Jacob was the biological father of N.R. After the hearing, the trial

court entered an order establishing that Jacob was legally the father of N.R. The court also granted Susan supervised visitation with N.R., declining to grant unsupervised visitation based on the fact that Susan had tested positive for marijuana use.

Susan then requested that the trial court address the issue of changing N.R.'s name to Searcy. The trial court held a hearing on the name change issue on July 7, 2017. The trial court entered an order later that day providing in relevant part as follows:

> Comes now the Court and having held a hearing on July 7, 2017 and the mother appearing in person and by counsel . . . intervenor/paternal grandmother with counsel . . . and the parties having presented evidence and the Court now finds as follows:
>
> 1)  That [Susan] has moved to have the last name of her deceased son [] given to his child.
>
> 2)  That [Susan] was granted status to intervene after her son was murdered.
>
> 3)  That [Susan] ensured that her son was determined to be the father of [N.R.] and also sought Grandparent Visitation Rights.
>
> 4)  That [Selena] objected to the intervenor filing this motion based upon Indiana law and the best interests of the child.
>
> 5)  That with knowledge of this case over the many months it took to establish paternity the court denied the objection and permitted the intervenor to continue.
>
> 6)  That [Susan] wishes the child's last name to be Searcy.

7) That [Susan] wishes the child to have the name of his murdered father.

8) That [Susan] believes it is important for her deceased son to have his only child have his father's name.

9) That [Susan] asserts the child is being supported by the deceased father's benefits that mother applied for a few months ago.

10) That [Selena] wishes the child's last name to be Robey.

11) That [Selena] asserted the father's last name is a bad one, that he did drugs and that he allegedly threatened her and the child on the night she left them.

12) That [Selena] was married to [Jonathan] Robey when she left Robey and went and lived with Jacob Searcy, at which time the child was conceived.

13) That [Selena] has known the Searcy family for at least ten (10) years, alleges the family has a bad name, and yet chose to live with and have a child with Jacob.

14) That [Selena] alleges the child having the Searcy name would be confusing for the child and not in his best interests.

15) That [Selena] has at least one (1) other child with a different last name than Robey.

16) That [Selena] has had four (4) different last names, including her maiden name, in her lifetime.

17) That taking into account the history of this case, the murder that has taken place of the father, and the fact the father continues to support the child through benefits, even in death, the child should carry the name of his father.

18) That it is in the child's best interest to know that he is a Searcy, that his father wished to be involved in his life before he

was suspiciously murdered, and the simple fact remains the child is half his and half the mother's.

19) That while there is no wish for [Selena] to ever get a divorce from her current husband, what would be confusing for this child would be if [Selena] divorced again and then this child would have no connection to the step-father, Robey.

20) While it may be "difficult" to explain the child's name later, this "difficulty" is caused more by [Selena]'s actions in stepping out on her husband to have an affair that led to the birth of this child.

21) This "difficulty" on [Selena]'s part should not be borne by the child.

22) Likewise, in analyzing this case from a point of view that if the father was still alive, the name change would occur since he is supporting the child financially as every father should do.

23) It is in the best interests of this child, in this case, to have his name changed.

24) Therefore, the name change shall be granted and the child shall have the last name of Searcy.

Appellant's App. pp. 10–11.[1] Selena now appeals.

## Applicable Law and Standard of Review

[8]     Indiana Code section 16–37–2–13 provides, in relevant part, that "[a] child born out of wedlock shall be recorded . . . under the name of the mother." However,

---

[1] The trial court's order spelled Selena's surname as "Roby." On appeal, Selena spells her surname as "Robey." We have altered the trial court's order to reflect Selena's spelling of her name.

a biological father may petition to have the child's surname changed to his surname. *In re Paternity of N.C.G.*, 994 N.E.2d 331, 334–35 (Ind. Ct. App. 2013). A biological father seeking to change the surname of his non-marital child bears the burden of persuading the trial court that the name change is in the child's best interests. *C.B. v. B.W.*, 985 N.E.2d 340, 343 (Ind. Ct. App. 2013) (citing *Petersen v. Burton*, 871 N.E.2d 1025, 1029 (Ind. Ct. App. 2007)). The father is not entitled to obtain a name change for his child absent evidence of the child's best interests. *Id.* (citing *In re Paternity of Tibbitts*, 668 N.E.2d 1266, 1267–68 (Ind. Ct. App. 1996)).

[9] Pursuant to Indiana Code section 34-28-2-4(d), "[i]n deciding on a petition to change the name of a minor child, the court shall be guided by the best interest of the child rule under IC 31-17-2-8." The referenced statute sets forth the best-interest-of-the-child rule as follows:

> In determining the best interests of the child, there is no presumption favoring either parent.[2] The court shall consider all relevant factors, including the following:

---

[2] Indiana Code section 34-28-2-4(d) modifies this no-presumption rule under certain conditions:

> [T]here is a presumption in favor of a parent of a minor child who:
> (1) has been making support payments and fulfilling other duties in accordance with a decree issued under IC 31-15, IC 31-16, or IC 31-17 (or IC 31-1-11.5 before its repeal); and
> (2) objects to the proposed name change of the child.

In *Petersen*, we held that this statutory presumption applies only to non-custodial parents who otherwise satisfy the requirements of the statute. 871 N.E.2d at 1028. Accordingly, here, the presumption has no application to Selena, who is the custodial parent. Nor would it apply to Jacob, who obviously did not object to, but rather sought, the name change. *See id.* (noting that "on the rare occasion that this court has applied the statutory presumption at issue, it has been applied in favor of a noncustodial father who objected to the name change proposed by his child's custodial mother.").

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:
    (A) the child's parent or parents;
    (B) the child's sibling; and
    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:
    (A) home;
    (B) school; and
    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

(9) A designation in a power of attorney of:
    (A) the child's parent; or
    (B) a person found to be a de facto custodian of the child.

I.C. § 31-17-2-8.

[10] In addition to these statutory best-interest factors, we have held that, when considering a request to change a child's surname, the trial court may also properly consider other factors, such as: whether the child holds property under a given name, whether the child is identified by public and private entities and community members by a particular name, the degree of confusion likely to be

occasioned by a name change, and the child's desires, if the child is of sufficient maturity. *C.B.*, 985 N.E.2d at 343 (citing *Tibbitts*, 668 N.E.2d at 1268).[3]

[11] On appeal, we review the trial court's decision only for an abuse of discretion. *N.C.G.*, 994 N.E.2d at 335. (citing *In re Paternity of M.O.B.*, 627 N.E.2d 1317, 1318 (Ind. Ct. App. 1994)). A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *C.B.*, 985 N.E.2d at 434 (citing *Petersen*, 871 N.E.2d at 1028).

[12] The trial court here entered findings of fact. We may not set aside a trial court's findings or judgment unless they are clearly erroneous. *Id*. at 343–344. When reviewing such findings, we first consider whether the evidence supports the factual findings; we then consider whether the findings support the judgment. *Id*. at 344. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id*. We will not reweigh the evidence or judge the credibility of witnesses. *Id*. We instead consider only the evidence favorable to the judgment and all reasonable inferences drawn in favor of the judgment. *Id*.

[13] It appears that the trial court here entered its findings *sua sponte*. In such a case, the general judgment will control as to the issues upon which the court did not make specific findings, and the specific findings control only as to the issues

---

[3] Additional factors which have been considered are the birth and baptismal records of the child, the school records of any older children, health records, and the impact of a name change when there are siblings involved whose names would not be changed. *Id*.

they cover. *Id.* It may not be necessary that each and every special finding be correct, and even where one or more special findings are clearly erroneous, the judgment may be affirmed if it is supported by other findings or is otherwise supported by the record. *Id.* Thus, we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court. *Id.*

## Discussion and Decision

In the present case, Selena argues that the trial court abused its discretion when it decided to grant the petition to change N.R.'s last name to that of his deceased father. In so doing, however, Selena refers almost exclusively to her testimony and other evidence that does not favor the trial court's decision, which we may not consider on appeal. *See C.B.*, 985 N.E.2d at 344. Considering only the evidence favoring the trial court's judgment, and the inferences that may reasonably be drawn from this evidence, we are unable to conclude that the trial court abused its discretion.

We first look to the best-interest-of-the-child factors set forth in Indiana Code section 31-17-2-8. We note that N.R. is a male infant and therefore is unable to express his wishes. N.R.'s mother, Selena, objects to the name change, but his late father, Jacob, desired to change N.R.'s surname. None of these first three statutory factors weigh heavily in favor or against the name change. With regard to the fourth statutory factor, again, N.R. is an infant and his interaction with his parents, siblings, and others is limited. But we do note that N.R. is cared for by his mother; he has one half-sibling, and has visitation with his

paternal grandmother, Susan. There was also evidence that Jacob attempted to visit his son but was murdered before he could have any interaction with the child. With regard to the fifth statutory factor, N.R. is an infant. Therefore, he does not go to school and has little interaction with the community at large.

[16] There was little evidence presented on the sixth factor, the mental and physical health of the parties involved, but Selena claims that Jacob was known to drink alcohol heavily and use illicit drugs. She also claims that Jacob had a criminal history including drunk driving, intimidation, and resisting law enforcement. However, her only support for these statements was her testimony, which the trial court was not required to credit or weigh as heavily as she desired. Thus, the trial court could conclude that there were no major mental or physical health problems that would bear on the issue of changing N.R.'s surname.

[17] Selena claims that the seventh factor, evidence of a pattern of domestic or family violence by either parent, weighs heavily against changing N.R.'s name. Selena claims that she obtained a protective order against Jacob after he allegedly threatened her and the child when she left Jacob and returned to her husband. Again, however, the evidence supporting these allegations consists of Selena's testimony, which the trial court was not required to credit. Moreover, even if true, Selena's testimony establishes one incident of a threat, not a pattern of domestic violence.

[18]    With regard to the eighth and ninth statutory factors, there is no evidence of N.R. being cared for by a de facto custodian, nor is there any evidence regarding a designation of a power of attorney.

[19]    Beside these statutory factors, the trial court may consider other factors. There was no evidence that N.R. holds property under his mother's name. And although the child was known by his mother's name, he was only known as such for a short period of time. Selena claims that there will be confusion, or as she terms it "difficulty," in changing N.R.'s surname to Searcy, as no one else in her family has that name, and Jacob's mother Susan, who has grandparent visitation rights, uses the surname Beetham, not Searcy. While this is true, we do not consider it an obstacle to changing the child's name. With the high prevalence of divorce and children born out of wedlock, it is no longer uncommon for children to have different surnames than their parents, step-parents, half-siblings, and step-siblings. Indeed, Selena's other child, N.R.'s half-sibling, has a surname other than Robey. And Selena herself has used three surnames other than her current one.

[20]    Selena's main argument is that a father's desire to change the name of his biological child is insufficient reason to grant a request for a name change. In support of her argument, Selena cites *In re Paternity of M.O.B.*, *supra*. In that case, there was evidence that the child was known by his birth name in his family and community and that he owned property and had a social security card in that name. 627 N.E.2d at 1319. Further, a doctor testified that the name change would not be in the child's best interests. *Id*. The only evidence

supporting a name change was that the father believed his last name was an "honorable" one that he wanted "carried on." *Id*. On appeal, we reversed the trial court's order granting the father's name change request, concluding that the evidence before the trial court did not show that the name change was in the child's best interests. *Id*.

[21] Similarly, in *Garrison v. Knauss*, 637 N.E.2d 160, 161 (Ind. Ct. App. 1994), we reversed the trial court's grant of a father's petition to change the name of his biological children where the only evidence the father presented regarding the best interest of the children was his statement that he desired the name change "for—just for—that paternal feeling that they are my children."

[22] Thus, in both *M.O.B.* and *Garrison*, we held that the desires of the father regarding his personal reasons for requesting the name change, i.e., to carry on the father's name or to enhance the father's paternal feelings toward the children, was insufficient to justify a name change. *See C.B.*, 985 N.E.2d at 346 (summarizing the holdings of *M.O.B.* and *Garrison*).

[23] In contrast, in the case of *In re Paternity of Tibbitts*, 668 N.E.2d 1266 (Ind. Ct. App. 1996), *trans. denied*, we affirmed a father's name change request based upon evidence similar to that in *M.O.B.* and *Garrison*. In *Tibbitts*, the child was known in the community and in private by the mother's name, and all records were in the mother's name. *Id*. at 1268. The father wanted to change the child's surname to match his "because he pa[id] child support, ha[d] visitation, and [wa]s involved in the child's life." *Id*. The evidence also showed that the father was a Potowami Indian and "claim[ed] that the child having his last name is

relevant to the child's Indian heritage." *Id*. On appeal, we framed the issue in *Tibbitts* as "whether it is sufficiently in the best interest of the child to give the child its father's surname when the father pays support, has visitation, and is actively involved in the child's life." *Id*. Ultimately, we determined that:

> [T]he indicators that complying with Father's request is in the child's best interest are that he does pay support, has visitation and participates in the life of his child. Moreover, he wants the child to share his name. This is conduct that society wants to encourage of men who father children outside of marriage.
>
> Although we are not saying that in every case of a [child born out of wedlock], the child should receive the surname of the father whose paternity has been established, *it is not an abuse of discretion for the child to receive the father's surname when there is evidence that the natural father acknowledges and supports his [child born out of wedlock], takes an interest in the child's welfare, and there are no factors which would make taking the father's name against the child's best interests.*

*Id*. at 1269 (emphasis added).

[24] Similarly, in *Petersen*, we held that the trial court did not err in granting a father's petition to change his biological child's name where there was evidence that the father's parenting, while not perfect, had improved significantly since paternity was established, the father provided consistent financial support for his child, and exercised regular visitation. 871 N.E.2d at 1031. The father in *Petersen* expressed a desire to improve his relationship with his child and there was evidence that using the father's surname would "provide immediate

emotional benefits to [the child] and will likely encourage the growth of stronger ties between [f]ather and [the child]." *Id.*

[25] In *C.B.*, we recognized that the holdings in *M.O.B.* and *Garrison* appear to be in conflict with the more recent holdings in *Tibbitts* and *Petersen*. *See* 985 N.E.2d at 346 (noting that this case law "show a split of authority on this court as to whether a father's financial support for, visitation and involvement with the child is sufficient evidence to demonstrate that changing the child's surname to his father's name is in the best interests of the child."). These cases "illustrate that whether it is in the best interests for a child born out of wedlock to be given the father's surname . . . is an issue to be resolved on a case-by-case basis." *Id.* at 346–47. But the more recent case law supports the conclusion that a father's financial support for his child and involvement with his child may be sufficient to show that changing the child's surname to his father's is in the child's best interest.

[26] Here, we believe that the facts of the present case support the trial court's decision to change N.R.'s name to that of his deceased father, Jacob. First, prior to his untimely death, Jacob showed an interest in having a relationship with his son and filed a paternity action seeking a name change. His paternal grandmother has also demonstrated her desire to have a relationship with the child by obtaining grandparent visitation rights. And, as noted by the trial court, even though Jacob is deceased, in a sense he still supports his child by way of N.R.'s receipt of his late father's social security survivor benefits. Moreover,

having his late father's surname will provide N.R. an attachment with his father that he otherwise will not be able to have due to his father's murder.

[27] This is not to say that the trial court was required to grant the petition to change N.R.'s name under these facts and circumstances. To the contrary, Selena presented evidence that, if credited by the trial court, would have justified denying the petition. Nor should our holding be read to mean that we would have come to the same decision if we were in the position of the trial court. But given our deferential standard of review, we are simply unable to say that the trial court's decision amounts to an abuse of the trial court's considerable discretion in such matters. Accordingly, we affirm the judgment of the trial court.

[28] Affirmed.

Najam, J., and Barnes, J., concur.